## Ingham's Estate

Before Lamorelle, P. J., Gest, Henderson, Van Dusen, Stearne, and Sinkler, JJ., and Marx, P. J., twenty-third judicial district.

The facts appear from the adjudication of

MARX, P. J., twenty-third judicial district, specially presiding, auditing judge. —Annie V. Ingham died December 4, 1931, having first made a will, dated April 11, 1928, of which she appointed Mary H. Ingham executrix, to whom letters testamentary were granted December 11, 1931.

The will of testatrix reads as follows:

"I wish two thousand dollars to be given to Stephen F. Keogh grandson of Mary Kelly Keogh.

"One thousand dollars to John Martin Keogh, son of Mary K. Keogh.

"One thousand dollars to Mrs. Ann Jane Connor—

"One thousand dollars to Mary A. Mulhern the oldest of the Mulhern sisters.

"All the furniture that I brought into the Mulhern home I give to The Mulhern sisters.

"My silver not in use in the Mulhern house, I wish given to my cousin Mary H. Ingham, and also my jewelry—and I wish her to give the jewelry and silver to my various relations. The breastpins I had change from my mother's watch I give to my Cousin Mary H. Ingham.

"I wish two thousand dollars to be put in trust in the Girard Trust Company until Betty Morris is twenty-one, then to be given to her. What is left of my money after my debts are paid, I wish given to The Baptist Home, on the

Roosevelt Boulevard, Pennepack Circle, I wish Mary H. Ingham to be my Executrix."

The question for determination is what is meant by the words "what is left of my money after my debts are paid".

At the time that the will was executed testatrix had money on deposit in three banks totaling $3,139.46. The inventory and appraisement filed shows that testatrix had on deposit with Girard Trust Company, at the time of her death, $1,534.29; with the Philadelphia Saving Fund Society, $1.76; in an agency account with Girard Trust Company, $389.02; and with the Hamilton Trust Company, $115.08. No value was placed upon the last-named deposit, but the account shows that there have been received from the Hamilton Trust Company in liquidation of the deposit account two dividends of $11.51 each.

The inventory also shows that there was cash found among decedent's effects amounting to $170.62; that she owned bonds appraised at $17,882.93; stocks appraised at $5,989; and jewelry, furniture, etc., appraised at $28.70. The account shows additional items not included in the inventory and appraisement, which need not be specifically mentioned.

The executrix also received from the estate of John Howard Ingham, deceased, pursuant to adjudication in the Orphans' Court of Philadelphia County, sur first account of Girard Trust Company, substituted trustee for Annie V. Ingham, under will of John Howard Ingham, deceased, securities and accrued income aggregating $12,538.01, less an overdraft of $588.79, or $11,949.22.

By the fifth item of the will of John Howard Ingham, deceased, he gave one third of his residuary personal estate to his trustees in trust to pay the net income therefrom to Annie V. Ingham, the testatrix, for life, and "at her death to pay over the whole of the principal to her lawful issue if any, but should she die without leaving lawful issue then to pay over the said principal to my next of kin according to the laws of the State of Pennsylvania." Annie V. Ingham, the cestui que trust, died without leaving issue.

At the audit of the trustee's account, the corpus of this trust fund was claimed by the executrix of this estate and a nephew and niece of John Howard Ingham, deceased, on the ground that the next of kin were to be determined as of the death of the life tenant. As John Howard Ingham died prior to the passage of the Act of June 29, 1923, P. L. 914, which provides that the next of kin shall be construed to mean the next of kin at the death of the life tenant, the law as it existed prior thereto was applicable. The auditing judge held that the next of kin were to be determined as of the death of testatrix. Exceptions were filed, and the court in banc dismissed them: Ingham's Estate, 17 D. & C. 251.

It appears from the brief submitted by counsel for the next of kin of Annie V. Ingham that John Howard Ingham was survived by his widow, a son, and the testatrix, his daughter, and that "his widow and son left their estates to the testatrix so that the entire remainder interest in the trust estate was held to vest in the testatrix."

The word "money", like many other words in the English language, has more than one meaning. In order to ascertain what testatrix meant by the use of the words "my money", we must take into consideration the context.

For the moment, let us confine ourselves to the language of the will itself.

The will, it is admitted, is in the handwriting of testatrix, and a mere reading of it shows that she had no experience in drawing wills.

Testatrix first makes specific and pecuniary bequests. She does not indicate the source of payment of the pecuniary bequests. The money she had on deposit at the time of the execution of the will was insufficient for the purpose. The

inference is unavoidable that she intended that her personal property, not specifically bequeathed, should be converted into cash, and that the pecuniary legacies should be paid out of the proceeds of sale.

It may also be reasonably inferred that she was speaking of the money realized from the sale in excess of the amount required to pay the pecuniary legacies when she used the words "what is left of my money". When she came to this point, she realized that her debts must be paid, and as she had made no previous provision for their payment she added the additional words "after my debts are paid".

It might be urged that the gift of "what is left of my money after my debts are paid" is in the nature of a specific bequest. If this contention were sustained, then an intestacy would result as to the difference between the amount realized from the sale of property and the amount required to pay the pecuniary legacies. Where, however, there is any language in a will that can reasonably be construed to avoid an intestacy, the court will so construe it. The words "what is left of my money after my debts are paid" occur at the end of the will, and that is the natural location of the residuary clause.

In the opinion of the auditing judge, the words "what is left of my money" mean the residue of personal property.

At this point, reference should be made to Jacobs' Estate, 140 Pa. 268, on which counsel for the Baptist Home relies.

In that case, it appears that the estate of testatrix at the time she made her will consisted of personal property only. She gave "the remainder and residue of my money" to a named charity. The personal property at the time of the execution of the will was sufficient in amount to pay the pecuniary legacies in full. After the execution of the will, however, testatrix sold some of her personal property, and with the proceeds of sale bought real estate; and the result was that the personal property that she left at the time of her death was insufficient to pay the pecuniary legacies in full. The court held that the deficiency was payable out of the proceeds derived from the sale of the real estate; and furthermore, that the rest of the proceeds of sale did not go under the intestate law, and that the charity was entitled thereto.

As the auditing judge understands, counsel for the next of kin concedes that the gift of "what is left of my money" is residuary rather than specific.

He contends, however, that testatrix did not intend, under the designation "my money", to include her remainder interest in the trust estate created by her father, for the reason that she did not know she was entitled to the corpus in the event that she died without issue.

The testimony produced convinces the auditing judge that testatrix thought the "next of kin" of her father were the persons who answered that description at the time of her death; and the auditing judge finds that to be the fact.

Evidence was also produced to show that testatrix in speaking of her property, other than her remainder interest under her father's will, used the words "my money", and when she spoke of the trust estate, she referred to it as "father's estate" or "the Ingham money". If she did not know that she as next of kin of her father was entitled to the corpus in the event she died without issue and thought the extent of her interest was the receipt of the net income therefrom, then it is a fair inference that she was referring to the property that she owned absolutely and not subject to any trust. The auditing judge therefore finds as a fact that testatrix in her lifetime used the words "my money" to indicate what she owned absolutely and unfettered with a trust.

Having established testatrix's lack of knowledge and that the words "my money" meant to her all her property except the remainder interest, counsel argues that the words "my money" must be so construed.

On the other hand, counsel for the Baptist Home contends that the words "what is left of my money" are unambiguous, that the plain meaning of this language is that the Baptist Home shall receive all of the residue that testatrix owned, and that evidence to show that she meant less than all is inadmissible because it would be making a different will by oral evidence.

There is no case directly in point, but a consideration of some of the cases that most closely resemble the instant case will prove helpful in arriving at the proper solution.

In Levy's Estate, 161 Pa. 189, testatrix made specific bequests of furniture to a son and three daughters, and in four separate places of the will she gave her three daughters "any money not disposed of in my name . . . to my credit", "any sum of money I may have by me", "any sum of money I may have by me", and "any sum of money by me". The will contained no residuary clause.

Her husband, by his will, gave the entire income of the residue of his estate to his wife for her support and maintenence for life, with a provision against disposition by will. After her death the Supreme Court declared the provision against disposition by will invalid, and there was paid to the personal representative of her estate $156,000 of accumulated income. The court held that there was an intestacy as to these accumulations, and this ruling was affirmed by the Supreme Court.

Ferguson, J., the auditing judge, said:

"It was contended that when a person makes a will the presumption is he intends to dispose of his whole estate and not to die intestate as to any portion thereof, and that in this case, if we do not give to the word 'money' the general meaning here claimed for it, we make the testatrix die intestate as to the bulk of her estate. This is true. But in this case the testatrix did by her will dispose of all the estate that she supposed that she possessed. The portion thereof that is the subject of this present account fell into the hands of her administratrix three years after her death. The ownership of this property or the right to dispose of the same by will was something that the testatrix never dreamed of. It is fair to presume that if she had thought she was disposing of this large estate she would have had her will prepared in a more formal manner. Be that as it may, the fact remains that the testatrix thought she had disposed of all she possessed, and therefore the rule above invoked can hardly have any application to the present case.

"There are a couple of other rules of construction, however, that favor the view of this case taken by the auditing judge. First, 'The heir is not to be disinherited, except by express words or clear implication,' and, second, 'All doubts as to the proper construction of a will should be resolved in favor of that view which comes nearest to the statute of distribution.' "

In Fleck v. Harmstad et al., 304 Pa. 302, testator gave "all my Household goods, wearing apparel and Jewelry &c unto my friend Mary G. Kingsley". After his death, it was judicially determined that he had an interest in real estate of which he was ignorant. It was contended that the clause quoted was, in effect, a residuary clause. It was held that testator died intestate as to said real estate. The Supreme Court, in affirming, used the following language (p. 306):

"A discussion of the intention of the testator, Edwin Harmstad, with respect to the real estate in question avails us nothing, for Harmstad was entirely without knowledge at the time he made his will and at all times thereafter that he

had any interest in this real estate. One cannot have any intention toward a thing of whose existence he is unaware. The fundamental question before us is whether the will contains sufficient words to pass the real estate in question. The will contained no general residuary clause, and paragraph three of the will cannot be construed as such."

In Miller et al. v. Bower, 260 Pa. 349, testatrix, after making certain specific bequests, gave her sister the interest on certain mortgages for life, and at her death, gave "all my mortgages and money and personal property" to three named beneficiaries. The will contained no residuary clause. Thereafter, testatrix converted some of her mortgages into cash and purchased real estate with the proceeds. The court held that the word "money" was not used in the sense of property and that there was an intestacy as to the real estate.

The principle deducible from these cases is that, if there be a specific bequest of money, the word "money" will be given such construction as the context requires. Property that would not pass under such construction will not be held to pass merely to avoid an intestacy.

The problem, however, is quite different where there is a residue of money given. In such cases the court inclines very strongly against a ruling that there is an intestacy.

Stripped of all unnecessary details and nonessentials, the question we have to deal with here is, if there be a residue of money given, and the context shows that the word "money" was used in the sense of personal property, is evidence admissible or relevant to show the knowledge of testator as to what he owned and what he did not own. Ought we to restrict the operation of the residuary clause to what testator knew he owned and say that it does not apply to something he did not know he owned?

If this be permitted, then we can naturally expect applications to be made to this court that the operation of a residuary clause in a will be restricted to that which the testator knew he owned, and the door to perjury would be thrown wide open.

The auditing judge is of opinion, and so rules, that where the residue is given, the residuary legatee is entitled thereto irrespective of the fact that testator did or did not know what was or would be embraced in that residue; that in the instant case "what is left of my money" is used in the sense of "residue"; and that the words are unambiguous and resort to evidence dehors the will cannot be had in order to restrict its meaning. The evidence was received subject to objection and exception, and although it is sufficient to prove what counsel for the next of kin desired to show, it is immaterial.

Before leaving the subject, reference should be made to Arnold's Estate, 240 Pa. 261. In that case, testatrix left a holographic will in which she provided as follows: "My jewelry and other personal things, are to be divided equally among my two sisters, Ella R. Arnold and Mary Arnold Babcock." The will contained no residuary clause. Her estate consisted of securities and cash in bank of a value of $158,000, and furniture, jewelry, and clothing of a value of $300. The court permitted evidence to be introduced to the effect that it was her habit to speak of her estate in the hands of the trust company as her "things" and awarded the entire personal estate to her two sisters. Justice Moschzisker, at page 265, said:

"Words of the character employed in this will are susceptible of a comprehensive meaning, and if the two sisters named by the testatrix were her only near kin, under the rule that an intestacy is always to be avoided when possible, the writing could be readily construed as passing all her belongings."

But in the instant case, the evidence is not introduced for the purpose of avoiding an intestacy but in order to create one. It cannot therefore be considered as an authority in the instant case.

If testatrix had known that her property consisted, in part, of the corpus of the trust estate, she might have made a different disposition. She might not have given all of her property to the Baptist Home. On the other hand, she might have done so. What she would have done is a mere matter of conjecture. What is certain is that testatrix gave all the residue of her personal property to the Baptist Home, and the court cannot go astray by doing that which she directed. It cannot substitute a conjecture for a certainty.

The auditing judge therefore rules that the personal property of testatrix remaining after the delivery of the specific legacies and the payment of the pecuniary legacies, debts and administration expenses passes to the Baptist Home.

*Harold Evans*, for exceptants; *Jenkins & Bennett*, contra.

LAMORELLE, P. J., October 27, 1933.—The controversy is over the meaning to be given this clause of the will of Annie V. Ingham: "What is left of my money after my debts are paid, I wish given to The Baptist Home, on the Roosevelt Boulevard, Pennepack Circle."

The learned auditing judge held it to be a residuary clause and awarded the legatee therein named the property which testatrix knew she owned and also other property in which she had an equitable life estate, the remainder also being in her in case she died without children or decendants, though she spoke of this latter property as Ingham money and was not aware that it might ultimately be hers.

The exceptants are three of eight cousins, next of kin. They claim that there is an intestacy as to so much of the money as came to the executrix at the time and because of the death of testatrix. Other exceptions go to the refusal of the auditing judge to consider oral testimony to show what testatrix meant by the language of her will above quoted. They argue that property cannot pass under a will, if the testatrix did not know that such property was hers; in short, that she could not be said to intend to give that which she did not know she owned.

. The adjudication is lengthy and comprehensive. The learned auditing judge has covered the question at issue from every angle. As we agree with him in his interpretation, it would seem unnecessary to add thereto, except to emphasize one point, and that is to call attention to a well argued and thoroughly considered case which, by analogy, would seem to be relevant. We refer to Aubert's Appeal, 109 Pa. 447. In that case, Mrs. Aubert, widow of George P. DeSilver and having a power of appointment under his will, remarried and afterwards made a will in favor of her second husband, J. E. Aubert, wherein she left "all her fortune" to such husband. At the time of the making of her will, in case she wanted to exercise the power of appointment, it was necessary to refer to it in terms; this she did not do. Later in her lifetime, the Act of June 4, 1879, P. L. 88, was passed, wherein it was provided that a general bequest or devise should operate as an execution of a power. After her death, an account was filed in the estate of George P. DeSilver. The surviving husband, J. E. Aubert, claimed a share of the DeSilver estate on the theory that the will was an exercise of the power. It goes without saying that as the law was changed after the making of the will, she could not have intended, if intention was sought, to bequeath more than what she at the time knew to be hers. This court so ruled in an opinion by Judge Penrose, Judge Ashman dissenting. The Supreme Court reversed, and the question is thoroughly discussed by Mr. Justice Paxson, at page 459-60.

It would seem to follow that, in order to avoid an intestacy, although testatrix did not know and could not know of property other than that which she at the time physically possessed, such property would pass by a residuary clause, whether it came to the maker of the will in her lifetime or at or after her death and because of her death. See also 40 Cyc. 1564, note 59, and Smith v. Dugan, 145 App. Div. 877, 130 N. Y. Supp. 649 (affirmed, 205 N. Y. 556).

All exceptions are dismissed and the adjudication is confirmed absolutely.