GEORGE SWEET, as Executor, etc., Appellant and Respondent, *v.* HENRY K. BURNETT, Appellant and Respondent, et al., Respondents.

Where in an action for the construction of a written instrument proof of an extrinsic fact is made in order to create an ambiguity which did not prieviously exist, to have that effect the fact itself must be without ambiguity and not merely the basis of a possibility.

While the meaning of the word "money" when used in a will depends upon the context and may be affected by the condition of the testator's property and the surrounding circumstances, a construction giving it a meaning which includes real estate, if ever possible, can only be sustained where the intention is so clear and plain as to be in effect compulsory.

R. died possessed of certain personal property and under the will of her husband she was entitled to all his real and personal property; his estate had not been settled at her death and the personalty remained in the hands of his executor. The real estate R. had taken possession of and had agreed by parol to sell; she had given to the purchaser, who had paid nothing on the contract and had not taken actual possession, a key of an unoccupied house on the premises. The will of R. after disposing of nearly all of her own personal property directed that her funeral and other expenses should be paid out of the "money" of her husband's estate. She then gave certain legacies out of the same and the residue to certain beneficiaries named. The money in the hands of the executor was insufficient to pay the particular bequests. The testatrix used the word "money" in two other places in the will, one referring to the amount due her on a mortgage, the other to a deposit in bank. *Held*, that the personal estate coming to R. under her husband's will was disposed of by her will, but the real estate was not disposed of or affected thereby.

Reported below, 65 Hun, 159.

(Argued October 28, 1892; decided December 6, 1892.)

CROSS-APPEALS from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 22, 1892, which modified and affirmed as modified a judgment entered upon a decision of the court on trial at Special Term.

This action was brought to obtain a judicial construction of the will of Julia A. Rozell, deceased.

The substance of the provisions and facts, so far as material, are stated in the opinion.

*C. B. Herrick* for appellant.    The primary rule for the interpretation of wills is that the court should endeavor to discover and give effect to the intention of the testator even though it may be inartificially expressed.   (*Keteltas* v. *Keteltas,* 72 N. Y. 312; *Goebel* v. *Wolf,* 113 id. 405, 412; *Drake* v. *Drake,* 56 Hun, 590, 595 ; *Parks* v. *Parks,* 9 Paige, 107; 1 Redf. on Wills, 432, 433.)   The very fact of making a will raises a presumption that the testatrix did not intend to die intestate as to any portion of her property.  (*Sadler* v. *Turner,* 8 Ves. 717–723 ; *Provost* v. *Calyer,* 62 N. Y. 545; *Vernon* v. *Vernon,* 53 id. 351; *Brynes* v. *Baer,* 86 id. 210; 1 Jarman on Wills, 692 ; 2 Redf. on Wills, 442, 443; *Doe* v. *Morgan,* 6 B. & C. 512.)   The meaning of any word used in the will may be sought in the light of the presumption against intestacy above mentioned, the context of the will, and in all the circumstances surrounding the testatrix and her property, and the word "money" is not in any case necessarily limited to a technical signification.  (*Smith* v. *Burch,* 92 N. Y. 228; *In re Miller,* 48 Cal. 165; *Cowling* v. *Cowling,* 26 Beav. 449; *Boys* v. *Morgan,* 3 M. & C. 661 ; *Crooke* v. *De Vandes,* 9 Ves. 197.)   It is proper to place the court in just the position which the testatrix occupied, with reference to her property and the objects of her bounty.  (Redf. Sur. Pr. 249; *White* v. *Hicks,* 43 Barb. 65; *Terpening* v. *Skinner,* 30 id. 373; Wigram on Ex. Ev. rule V.)   The defendant Henry Burnett is the brother and only heir of the testatrix, and to him by her will, she gives the sum of five dollars ; this gift is not consistent with an intent to give by her will only the cash part of her husband's estate, and to die intestate as to the remainder. (*Rathbone* v. *Dyckman,* 3 Paige Ch. 8; *Masterson* v. *Townshend,* 123 N. Y. 458; *Post* v. *Hover,* 33 id. 593–599 ; 1 Jarman on Wills, 724.)   The absence of an expressed power of sale does not aid the claim of the heirs.  (*Byrnes* v. *Baer,* 86 N. Y. 210.)

*L. B. Sackett* for respondent.   There is nothing in the will to show that it was the purpose of the testatrix to dispose of

all her estate. The farm is not mentioned. An intention to cut off the heir cannot be inferred or proved by extrinsic evidence. There must be an express devise. (3 Jarman on Wills, 704, 767; *Mann* v. *Mann*, 1 Johns. Ch. 231; 14 Johns. 1, 12; *Beach* v. *McGillis*, 9 Barb. 35, 59; *Smith* v. *Burch*, 92 N. Y. 228; 2 Redf. on Wills, 129.) The title to the promissory notes given to William Rozell and to his savings bank account is in his executor. The executor is not chargeable with them as so much money in his hands until they are collected. (*In re Mason*, 34 Beav. 494; 92 N. Y. 233.) The executor is not invested with any power or trust under this will in respect to real estate. (Code Civ. Pro. § 1538.) The language of the will, to wit: "The residue of said money I wish to have divided equally between my husband's nieces and nephews," does not create an equitable conversion of the farm into personalty, so as to enable the executor to sell. (46 N. Y. 162; 66 id. 169.) The testimony of John A. Overocker, proving a verbal agreement to purchase the farm, was improperly admitted. (*Williams* v. *Freeman*, 83 N. Y. 561; *Mann* v. *Mann*, 1 Johns. Ch. 231; 3 Jarman on Wills, 705.)

FINCH, J. The construction of the last will of Julia A. Rozell is involved in this appeal, the question arising between her legatees and her brother as sole heir and next of kin, and respecting mainly the ultimate disposition of a farm devised to the testatrix by her deceased husband. At the date of her death, she owned and possessed, in her own name and right, personal property which consisted of a bond and mortgage against the widow of Ephraim Rozell for five hundred and forty-five dollars, upon which some interest had accrued; a deposit in bank amounting to about five hundred and forty-three dollars; some household goods valued at one hundred and ten dollars, and farm produce inventoried at eighty dollars. She died in August of 1891, and her husband in September of the previous year. By his will he had devised and bequeathed to her all his property, real and personal, but subject, of course, to the payment of debts and expenses. The

husband's personal estate had not been settled at the date of the death of testatrix, but remained in the hands or under the control of his executor. The real estate consisted of a farm valued at about seventeen hundred dollars, which the testatrix, as his devisee, had agreed by parol to sell to a third person, and had given him the key of an unoccupied house on the premises. Nothing had been paid on this agreement, and it does not even appear that the purchaser had taken actual possession. These are the principal facts in the light and by the aid of which we are to determine the disputed question of construction.

The testatrix by her will gives the proceeds of her mortgage, partly to her cousin, Mary Hawley, partly to the Methodist church, and a residue remaining to Mary Hawley, Agatha Ketcham, Mary J. Heermance and Almira Rozell, and to the four persons last named all her clothes and housekeeping utensils. The testatrix disposed of the "money in the bank" standing in her name by giving to her brother, the appellant Burnett, the sum of five dollars, and the balance to the four ladies last above named. These provisions disposed of all her personal property, except the eighty dollars of farm produce, so far as she held and owned it in her own right. But between the gift of the mortgage proceeds on the one hand and of the money in the bank on the other, there appears in the will the clause over which this controversy has arisen. It reads thus : "From the money of my husband's estate now belonging to me, I desire that all my funeral and other expenses be paid, and out of the same I give to Robert Nickerson the sum of one hundred dollars; to Francis Nickerson the sum of one hundred dollars, both being of Yonkers, N. Y. The residue of said money I wish to have divided equally between my husband's nephews and nieces." There were more than twenty of these who appear in this action by ten different attorneys, and on their behalf it is claimed that the phrase "money of my husband's estate now belonging to me," includes and so devises to them the real estate of about fifty acres which vested in the testatrix by the devise of her deceased husband. The Special

Term sustained that construction, and adjudged that the clause in question passed all the property, personal and real, which was bequeathed and devised to testatrix by him. The heir appealed, and the judgment was modified by the General Term so far as to decide that the farm did not pass by the will, but descended to Burnett as heir at law, and as modified the judgment was affirmed. Thereupon both parties appealed to this court.

Burnett's appeal denies that the phrase in question covers even the personal property in the hands of the husband's executor so far as the same is uncollected, and has not been transformed into cash due and payable to the legatee. That is quite too narrow a construction. Little or nothing would be left for the legatees of the testatrix; not even enough to pay the two particular legacies, saying nothing of those given as residue. The testatrix drew no such distinction. That which she did draw, and the only one in her mind, was between the personal estate which she owned in her own right and that which she derived from the bequest of her husband. She regarded the latter as money because it was to come to her as money. She referred to it not as a definite sum due and payable to her, but as money "of her husband's estate" and as "belonging to" her, the clear meaning being that the expression covered the entire personal estate belonging to her under and by force of her husband's will.

But further than that we do not think it is permitted to go. It may be true that the word "money" might be so used in a will as to include and cover a farm or some specific real estate. One authority to that purport has been brought to our attention. (*Estate of Miller*, 48 Cal. 165.) But certainly no such violent extension of the word beyond its normal and proper meaning can ever be justified unless the intention to so use it is clearly manifest on the face of the will and put beyond all reasonable doubt. That cannot be said of this will. Granting that the bare fact of making a will raises a presumption that the testator did not intend as to any of his property to die intestate, although that is pertinent rather to

the solution than the creation of an ambiguity : granting also that the testatrix may have regarded her parol and invalid contract for the sale of the farm as likely to become effective, still these are not sufficient reasons for reading a gift of money as a gift of land. The purchase price could not be properly or naturally described as money " of " her husband's estate. It never was his money or that of his estate, and that fact she perfectly well knew, for she had gone into possession of the farm as her own property and gathered the crops from it and it had ceased to be any part of her husband's estate and became distinctively her own. Nothing on the face of the will suggests that the word " money " was used so far away from its normal and ordinary meaning as to include land. She used it in two other instances : once speaking of the money payable to her on the Rozell mortgage and again of the money standing in her name in the bank. In both instances she uses the word in its common and ordinary sense and never in a manner to indicate that it included or covered real estate. On the contrary the very form and character of the provision in question indicate that she meant money and not land. Her own personal property only amounted to about twelve hundred dollars and that she gave to the four ladies one of whom was her cousin, less two small legacies. In the hands of her husband's executor was about four thousand dollars. She naturally and properly describes that as " money of her husband's estate belonging to her," that is money or the securities representing it, still " of " the estate, that is remaining in it and not paid over, but nevertheless " belonging to her," that is again, to come into her possession under the will. She directs her funeral expenses to be paid out of it, evidently assuming that it would be at once available as money, and in that form and " out of the same " gives two sums of one hundred dollars each, and the " residue of said money " to be divided equally between her husband's nephews and nieces. It is a residue of said money, of the same money, out of which she directed her funeral expenses to be paid. If she meant to include the farm did she mean that the devisees should have two acres

each, or if she meant its proceeds why did she not authorize a sale? She had made none which she could enforce and must have known it. So far we see that she was not unmindful of her husband's nephews and nieces. If we add the farm, descending to her brother, to what she gave to her own relatives, it makes less than three thousand dollars, and it is quite obvious that she gave as much as that to her husband's relatives. When she treated them as well as she did her own have we any right to make her say land where she said money in order to treat them better? Obviously we are driven out of the will and to the extrinsic fact that she had made an invalid contract for the sale of her farm, in order to get the shadow of a basis for a guess that she might have regarded it as "money of her husband's estate." If an extrinsic fact may create an ambiguity which does not previously exist it should at least be itself without ambiguity and not merely the basis of a possibility.

It is said that she gave Burnett five dollars and so meant that he should have no more, but it is easier to suppose that she gave him that because she knew he would have the farm than that she meant to treat him with contempt without even the excuse of quarrel or dislike.

While it is true that the meaning of the word "money," when used in a will depends upon the context and may be affected by the condition of the testator's property and the surrounding circumstances, (*Smith* v. *Burch*, 92 N. Y. 228), it must yet be added that a construction broad enough to give it a meaning which includes real estate, if ever possible, can only be sustained where the intention is so clear and plain as to be in effect compulsory. The facts of this case do not disclose such an intention.

The judgment of the General Term should be affirmed, but without costs to either party.

All concur, except EARL, Ch. J., and PECKHAM, J., dissenting.

Judgment affirmed.