## Levy's Estate. Altemus's Appeal.

*Will—Residuary estate—" Money "—Disinheriting heir.*

While the word " money " may, when so intended by the testator, include any kind of property, even land, it can never have that effect when the text of the testament clearly shows that it was not so intended.

Testatrix left to survive her one son and three daughters. Her will was in four parts, each separately signed and witnessed, and each relating to a particular child. It contained specific bequests of household effects and small bequests to servants. It also contained these clauses : " If any money not disposed of in my name is to my credit, I wish my daughters to share equally their part," and " any sum of money I may have by me to be equally divided between my three daughters." There was no other provision as to the residue or balance of her estate. *Held*, that under the circumstances of the estate, the word " money " did not include the estate generally.

Argued March 28, 1894. Appeal, No. 256, Jan. T., 1894, by Medora L. Altemus et al., from decree of O. C. Phila. Co., April T., 1893, No. 337, distributing estate of Mary Ann Levy, deceased. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Exceptions to adjudication of account of administratrix c. t. a.

Before the auditing judge, FERGUSON, J., it appeared that Mary Ann Levy died on Feb. 6, 1891, leaving to survive her three daughters and a son. By her will written on four separate pieces of paper, each executed by testatrix and attested by witnesses, she directed as follows :

" These few lines will make my wishes known and I feel

sure my dear children will be agreeable to them and see them faithfully carried out."

And then follows the bequest to her children :—

"For Edmund if he wishes the old fashioned clock and his father's book case, if not for his sister Annie, after her my daughter Mamie to have them. I do not mention anything further for him as I know he would not care for any of my furniture. If he wishes the things he has given me they may be returned to him, his father's gold headed cane and fob chain.

"For John, if any money not disposed of in my name is to my credit, I wish my daughters to share equally their part and pay to John the sum of $500, Mary Ellen $250 and Hannah Gallagher $250 for their faithful and untiring services rendered to me for many years and especially during my sickness.

"For daughter Medora I wish her to have the iron safe, the parlour mirror " (here follows a long list of articles of household furniture, etc., concluding with the words), " Any sum of money I may have by me divided equally between my three daughters, they to take out of it and share equally in paying the sums named for John, Mary Ellen and Hannah for their faithful services," etc.

"For daughter, Annie L., my bedroom furniture " (here follows a long list of articles of household furniture, etc., concluding with the words), " Any sum of money I may have by me to be equally divided between my three daughters, they to share equally their parts and pay to John, Mary Ellen and Hannah the sums named for them.

"For my daughter, Mamie L., the parlour furniture " (here follows a long list of articles of household furniture, etc., concluding with the words), " Any sum of money by me to be divided equally between my three daughters, they to share equally their part and pay to John, Mary Ellen and Hannah the sum named."

The auditing judge found in substance that nearly the entire estate of the deceased husband of testatrix consisted of his one half in the firm of Neafie & Levy. He died in December, 1867, and his interest in the firm was continued by his executors and trustees, for the benefit of his estate, under the powers conferred upon them by his will. The testator also gave to his son one third part or share of all the profits or income aris-

ing from the continuance of his interest in the said firm, and the entire income from the residue of his estate he gave to his wife for her support and maintenance during her life, with a provision against disposition by will, which latter provision was, after her death, declared invalid by the Supreme Court in Levy's Est., 153 Pa. 174.

The auditing judge found in effect that the executors never drew from the firm the entire two thirds of the profits to which they were entitled as trustees for Mrs. Levy. Considerable sums of money were paid to her for her support directly by the firm, weekly or monthly, as her necessities required. Other large amounts were paid out by the trustees for taxes, etc., but, according to the will, charged to the income to which the widow was entitled. Other large amounts were paid by the firm, and deducted from the profits or income to which she was entitled, and expended by the trustees for the benefit of the residuary estate, by investing the same in completing the two large dwelling houses which were commenced by her husband previous to his death. The balance of the profits and income was allowed to remain in the business and for the uses and purposes of the firm.

The auditing judge found that testatrix died intestate as to the accumulated income of the estate of her deceased husband, filing the following opinion as to the questions of law:

" In the first place, she did not know that she had any such estate to dispose of, because her title thereto had not only not been established at the time she wrote her will, but down to that time, and for a very considerable time afterwards, it had not even been suggested that this accumulated income was anything else but part of her husband's residuary estate, as he had directed in his will that it should be. Ten accounts covering a period of twenty-two years had so considered it, and the contrary had never been alleged by any one. Besides, Mrs. Levy must be presumed to have been familiar with the terms of her husband's will, as she was not only an executrix and trustee thereof, but the principal beneficiary under its provisions. She knew that while her husband had provided for her liberally, and placed no limit upon the amount of the income she might use during her life, yet he had provided in his will that she should not have power to dispose of any part or portion thereof

by any last will and testament she might make, but that so much thereof as was not consumed by her was to be considered as a part of his residuary estate. Now, while it is true that this provision has since been declared inoperative, yet the fact remains that it was accepted as a valid provision of the will of Mr. Levy by all concerned for upwards of twenty years. Mrs. Levy, therefore, must have understood that while she had the right to use all the income if she desired, she had no right to dispose of any portion of it not so used by any last will and testament. Is it probable then, that in the face of this prohibition, which she regarded as valid, she meant by her will to deliberately violate the provisions of her husband's will, and do that which, as she understood his will, she had no right to do?

" The auditing judge does not think that she did. It is his opinion that all she intended by her will was to dispose of her household furniture, horses, carriages, etc., which were absolutely her own property under her husband's will, and whatever money she might have in the house or otherwise about her. That this was her intention is evident from several considerations.

" She had been in the habit of dividing the money which she received from the firm with her three daughters, and if at the time of her death there was any on hand she meant that it should be so divided. To dispose of this money and her household furniture was the purpose of her will. In speaking of Edward she said: "I do not mention anything further for him as I know he would not care for any of my furniture." She does not say that he would not care for any of her money or estate, as she would have said if she had thought that she had any to dispose of, and intended to exclude him from participation therein. All that the testatrix was thinking about was her household furniture and cash on hand. The language of the will is such as to preclude the idea that she thought she had any other estate or that she meant to dispose of any other.

" The words used are not the general and comprehensive ones, ' all my money,' ' all my estate,' but in four separate places in her will she says as follows: (1) 'If any money not disposed of in my name is to my credit,' etc. (2) 'Any sum of money I may have by me.' (3) 'Any sum of money I may have by me.' (4) ' Any sum of money by me.'

" All of these expressions imply a doubt as to whether any money would pass under her will. ' If any money not disposed of ' is the first one, and ' any sum of money I *may have* by me ' in the other two. This can hardly be the language of a person who is disposing of an estate of $160,000, particularly an old lady, not in business, and with no possibility of creditors. She would not be likely to write her will so as to throw a doubt over the question as to whether any estate might be left for division.

" It is true that the first expression quoted is ' if any money not disposed of in my name is to my credit.' From this it was argued that she meant the surplus income to her credit. But this idea is negatived by the fact that there was no surplus income to her credit, it was to the credit of her husband's residuary estate, and if it had been to her credit she was prevented by the terms of his will from making any testamentary disposition of it. Besides, the bequest is limited to money ' by me.' This must mean the money she had in her hands or possession. She uses the words ' to my credit ' the first time, but in all three subsequent references to the money it is the money ' by me.' We must use words according to their generally accepted meaning, and the word ' by ' generally means ' near,' ' close to,' etc. While it may have other meanings in other connections, yet in this case it seems to the auditing judge it can mean nothing else than the money she had in her possession.

" It was contended that when a person makes a will the presumption is he intends to dispose of his whole estate and not to die intestate as to any portion thereof, and that in this case, if we do not give to the word ' money ' the general meaning here claimed for it, we make the testatrix die intestate as to the bulk of her estate. This is true. But in this case the testatrix did by her will dispose of all the estate that she supposed that she possessed. The portion thereof that is the subject of this present account fell into the hands of her administratrix three years after her death. The ownership of this property or the right to dispose of the same by will was something that the testatrix never dreamed of. It is fair to presume that if she had thought she was disposing of this large estate she would have had her will prepared in a more formal manner. Be that as it may, the fact remains that the testatrix thought she had

disposed of all she possessed, and therefore the rule above invoked can hardly have any application to the present case.

" There are a couple of other rules of construction, however, that favor the view of this case taken by the auditing judge. First, ' The heir is not to be disinherited, except by express words or clear implication,' and, second, ' All doubts as to the proper construction of a will should be resolved in favor of that view which comes _nearest to the statute of distribution.' In this case there was no sufficient reason appeared why the testatrix should exclude her son Edmund. She did not give him any of her furniture because she said he did not want any, but in the very first line of her will she speaks of her dear children, and expresses her confidence in them, and there is no reason to believe anything else than that they were all equally dear to her, and that she had the same affection for each."

Exceptions to the adjudication were dismissed in the following opinion by PENROSE, J. :

" There are undoubtedly cases where, under wills declaring or manifestly indicating an ·intention to dispose of the entire estate of the testator, a gift of ' money ' will pass his personal property generally. Smith v. Davis, 1 Grant, 158, is an illustration ; and as was there said by Judge WOODWARD, the ' word money . . . . may be construed to mean cash, or may stand for the whole personal estate, as the intention of the testator, deduced from every part of the will, may seem to require.' Jacobs's Ap., 140 Pa. 268, goes still further ; and, the intention to exclude the heir in that case being apparent, the proceeds of sale of lands, acquired after the date of the will, were awarded to the residuary legatee under a gift of ' the remainder and residue of my money.' These cases, however, are exceptional ; and the general rule as stated in Williams on Executors (Perkins' edition, 1877), page 1286, is that ' the word " money " does not extend beyond what is literally " money," unless the context requires it.'

" But even in a will manifestly disclosing a purpose of complete testamentary disposition, if the gift of money is accompanied by qualifying words, such words cannot be disregarded if a meaning can be given to them—especially if, understood in their natural sense, they serve to prevent the exclusion of one to whom a share of the estate would pass under the intestate

laws; and such qualifying words are found in the will now before us.  It is true that the gift to the daughters of the testatrix is of 'money;' but it is of money, in one case referred to hypothetically—'if any money not disposed of in my name is to my credit'—and in the others as 'any sum of money I may have by me.'  Moreover, there is an entire absence from the instrument of anything evincing an intention to dispose of her whole estate, or her belief that she was so disposing of it.  She does not even declare that the papers which she signs compose her last will, but says, simply, that, to the extent mentioned in them, 'These few lines will make my wishes known, and I feel sure my dear children will be agreeable to them and see that they are faithfully carried out'—a feeling she would scarcely have entertained if she intended that one of her children should have no share in the most considerable part of her estate.

"It would, in any case, be an undue straining of the meaning of the expression 'any sum of money I may have by me,' to make it embrace moneys in no sense 'by her' at all, but coming to her, under future settlements of accounts of the executors of her husband's estate, from a partnership continued after his death, under the provisions of his will, for her benefit for life, and at her death to his children, etc.  The words 'if any money . . . . is to my credit' might, it is true, include whatever upon the settlement of such accounts should be found due her; but the gift is only of such money 'not disposed of,' or 'not disposed of in my name,' and when she died there were no such undisposed-of moneys—the partnership moneys having, with her consent and direct participation, within a month after the execution of the will, been converted into the stock of a corporation, and moneys to which she was entitled under previous settlements having, also with her consent and participation, been applied for the improvement and repair of real estate in which she had a life interest.

"If, therefore, it be conceded that the testatrix, when she wrote the 'few lines' making known the wishes which she knew would 'be agreeable' to her children, had in her mind anything else than moneys, such as she had been in the habit of sharing with her daughters, actually paid to her and unexpended at the time of her death, or moneys due her for commissions as one of the executors of her husband, it is clear that she has included

in her gift nothing but ' money ' in its literal sense, for nothing else could be money ' not disposed of,' or money ' by ' her; but, as the auditing judge has so well shown, there is no reason to doubt, both from the language of the instrument and the light afforded by surrounding circumstances, that, not questioning the right of her husband to withhold from her the power of disposing by will of income not actually used or required by her while she lived, she made no attempt to dispose of it; and hence, though after her death the invalidity of the restriction was judicially determined, the income thus unconsumed passed to all her children under the intestate laws.   See De Silver's Est., 142 Pa. 74; Howe's Ap., 126 Pa. 233."

For dissenting opinion by HANNA, P. J., see 3 Dist. R. 37.

*Errors assigned* were dismissal of exceptions, quoting them.

*M. Hampton Todd* and *J. Howard Gendell*, for appellants, cited: Act of 1885, § 1, P. L. 193 ; Jarman on Wills, Perkins' ed. 702 ; Dowson v. Gaskoin, 2 Keen, 14 ; Redfield on Wills, part 2, p. 437 ; Waite v. Combes, 5 De G. & S. 676 ; Smith v. Davis, 1 Grant, 158 ; Jacobs's Est., 140 Pa. 268 ; Widener v. Beggs, 118 Pa. 374 ; Stewart's Est., 14 Pitts. L. J. (N. S.) 124 ; Copia's Est., 5 Phila. 214 ; McConnell v. Wright, 150 Pa. 275 ; Gilmore's Est., 154 Pa. 523 ; Reimer's Est., 159 Pa. 212 ; Fox's Ap., 99 Pa. 382 ; Oyster v. Knull, 137 Pa. 448 ; Hofius v. Hofius, 92 Pa. 305 ; Raudenbach's Ap., 87 Pa. 51.

*R. C. McMurtrie* and *John G. Johnson*, for appellee, cited: Baker v. Baker, 6 H. L. Cas. 630 ; Gore v. Langton, 2 B. & Ad. 680 ; Inchiquin v. French, 1 Cox Ch. 9 ; Duke of Cleveland's Est., L. R. 1893, 3 Ch. Div. 244.

PER CURIAM, April 16, 1894 :

We find it impossible to believe that the testatrix intended to dispose of her whole estate by the use of any of the words which are claimed to have such an effect in the four testamentary papers signed by her.   Those words did not purport to include anything but money, and the immediate context in each instance is of such a character as to preclude the possibility of attributing to her any other intent than to make a gift of money

1894.]                    Opinion of the Court.

distinctively as such.   The great bulk of the estate to which she was entitled at the time of her death had in it no money at all.   It consisted of a number of items of property, not one of which was money in any sense.   While it is perfectly true that the word money may, when so intended by the testator, include any kind of property, even land, it can never have that effect when the text of the testament clearly shows it was not so intended. We concur with the opinion of the majority of the court below, and, substantially for the reasons there expressed, we affirm the decree.

Decree affirmed and appeal dismissed at the cost of the appellants.