## Goode et al v. Bonta et al.

(Decided March 16, 1937.)

NELSON D. RODES and JAMES F. CLAY for appellants.
CHENAULT HUGUELY and C. C. BAGBY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Affirming.

Charles C. Bonta died testate in 1913, the owner in fee simple of a certain farm in Boyle county, Ky. He left surviving him his widow, Mattie Bonta, and three infant children, Henry J. Bonta, Willie Bonta, and Edna Bonta. A few months after the testator's death a fourth child, Grace Bonta, was born.

There is involved in this appeal the construction of paragraphs Nos. 3 and 4 of the will, which read as follows:

"Item 3—I give, bequeath and devise to my beloved wife Mattie J. Bonta, for her life or so long as she remains my widow, all of my property real, personal and mixed, wheresoever situated, and direct that neither the farm on which we now live nor the farm conveyed to me by my father, and which formerly belonged to my brother Henry, be sold during the minority of our three children, Edna Bonta, Henry J. Bonta and Willie Bonta, it being my wish that my said widow, out of the income and profits arising from aforesaid two farms, shall suitably provide for, educate and maintain our said children during their minority, and at her death all my property is to be equally divided between our said children then living and the heirs at law of any child that may have died; such heirs to take the share their ancestors would have taken had he or she lived.

"Item 4—In the event that my widow marries again, I direct that she be allotted a widow's dower

interest in my estate, the same that she would have received under the Kentucky Laws had I died intestate, and in that event I nominate and appoint my brother-in-law Fred Hourrigan of Marion County, Kentucky, guardian of our said three children, and devise and bequeath to him in trust for the use and benefit, education and maintenance of said children during their minority all of my said property, except my widow's dower interest aforesaid, and the two gold watches bequeathed to my sons in item 2.''

After the death of the testator, the widow, Mattie J. Bonta, married Robert Gray, and she is referred to in this record as Mattie B. Gray. After all the children reached their majority, Willie Bonta and his wife conveyed in fee simple all of his undivided interest in the said farm to his brother, Henry J. Bonta. At the time of the conveyance Willie Bonta had an infant son, Charles Bonta, one of the appellants herein, who is the grandson of the testator, Charles C. Bonta. Thereafter the widow, Mattie B. Gray, and her husband, Robert Gray, and all the children of the testator other than Willie Bonta, entered into a contract to sell and convey to G. B. Goode about 24 acres of the testator's farm for an agreed price of $1,400, to be paid when appellees, plaintiffs below, executed and tendered to Goode a deed vesting him with an absolute fee-simple title to the property with the usual covenant of general warranty. They executed and tendered the deed to Goode and demanded the contract purchase price of the property, and Goode refused to accept the deed or pay the price upon the ground that the sellers were unable to vest him with the fee-simple title to the property. Thereupon plaintiffs instituted this action under the Declaratory Judgment Act, sec. 639a—1 et seq. of the Civil Code of Practice, to have their rights and interests in the real estate judicially declared and determined. Charles Bonta, the infant son of Willie Bonta (the grandson of the testator), was made a party defendant to the action and properly brought before the court.

The question presented was: Did the testator intend that the fee-simple title to the property should vest in his children only upon the death of his widow, Mattie Bonta Gray, as provided in clause 3 of his will,

or did it vest upon her marriage as provided in clause 4?

The chancellor adjudged in substance that under the will of the testator, upon the marriage of the widow, Mattie Bonta, the real estate of the testator vested absolutely in the testator's children and that the deed from Willie Bonta and his wife to Henry Bonta conveyed to the latter an absolute fee-simple title to the interest of Willie Bonta in the property embraced therein, and that the infant defendant, Charles Bonta, has no interest whatever in the property mentioned in the petition or devised by the will of the testator, and that the deed executed and tendered to Goode by the plaintiffs was sufficient to convey to him the fee-simple title to the property as per contract. To this judgment G. B. Goode and Charles Bonta, the infant defendant, and James F. Clay as guardian ad litem for said infant, excepted and prayed an appeal to this court, which was granted.

It is urged for appellants that under the will of the testator the title to the estate cannot vest in testator's children until after the death of the widow, Mattie Bonta Gray, and that if either Henry J. Bonta, Willie Bonta, or Edna Bonta should pre-decease their mother, Mattie Bonta Gray, and leave a descendant or descendants that should survive Mattie Bonta Gray, then such descendants would take the share of their ancestor in the farm. In other words, from the date of the testator's death until the date of his widow's marriage, the children of the testator other than Grace, the pretermitted child, were respectively contingent remaindermen, dependent upon their surviving their mother, Mattie Bonta Gray, with executory devises over to the descendants of any child of the testator who might not survive their mother, Mattie Bonta Gray.

We cannot accept the construction of the will contended for by counsel of appellant. Paragraph 3 of the will bequeathed and devised to the widow, Mattie J. Bonta, all of testator's property for life *or so long as she remains his widow.* And later in the same clause (3) it is provided that at the death of testator's wife all his property be equally divided among his children then living, and the heirs at law of any child who should have died and the heirs of such child

or children that may have died would take the share that their ancestor would have taken had she or he lived. Under this paragraph (3) of the will the widow's interest was limited to a life estate in the property so long as she remained testator's widow. This indicates that the widow's interest in the estate would terminate upon her remarriage, but in the event she remained single she would hold the estate for life with the right to use the income and profits arising therefrom to support and educate testator's children during their minority, and at the death of the widow the title to all the property would vest in and be divided among the living children and heirs of such one or more of them as may have deceased. However, paragraph 3 of the will does not expressly provide that the title to the property shall vest in the children upon the death of his widow, but since the testator limited her interest to a life estate in any event, and provided that at her death the property should be equally divided among his children, would clearly indicate that he intended the property to vest in the children absolutely upon the death of his widow. O'Rear v. Bogie, 157 Ky. 666, 163 S. W. 1107.

Even if paragraph 3 comprised the whole will, we think that the words "so long as she remains my widow" make it reasonably clear that upon the remarriage of the widow, her interest in the estate, except dower, ipso facto terminated. But if it be conceded that paragraph 3 standing alone is ambiguous, paragraph 4 clarifies and removes all such apparent ambiguity.

Paragraph 4 of the will provides that in the event the widow marries again she will be allotted a widow's dower interest in the estate the same that she would have received under the statutes had testator died intestate, and devises the remainder of the estate to Fred Hourrigan in trust for the use and benefit of the testator's children during their minority. Again, the testator failed to specifically say in clause No. 4 that when all his children reach their majority his estate would vest in them. But having limited the trust to during the minority of the children, when all the children reach their majority the trust automatically ended. It will be seen that under paragraphs 3 and 4, upon the remarriage of the widow her interest in the

744

estate, except dower, terminated, and under paragraph 4 when the children reach their majority the trust title devised to the trustee, Fred Hourrigan, also terminated. It is clear that upon the happening of the two events, (a) the marriage of the widow, and (b) all the children having reached their majority, all limitations imposed in the will were removed, and the title to the property, except the widow's dower, vested in the children absolutely.

Since it is the rule that the law favors total testacy rather than partial testacy, and all doubts and ambiguity arising in a will will be resolved in favor of total testacy, and no presumptions will be indulged in favor of the suspension of the vesting of estates (Howard v. Howard's Trustee, 212 Ky. 847, 280 S. W. 156), it is not material that the testator failed to say in concise language just when the title to his estate would vest in his children. Moreover, upon the removal of the limitations imposed in the will, the estate descended to testator's children in fee simple under the statute of descent and distribution.

It follows that the judgment of the chancellor is correct.

Judgment affirmed.