# Lane et al. v. Railey et al.

Nov. 3, 1939.

320

W. B. White and Louis A. White for appellant.

Ed C. O'Rear, Charles D. Grubbs and W. B. Alexander for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

S. B. Lane and others appeal from a judgment of the lower court construing the holographic will of Bessie B. Lane, a maiden lady who died April 16, 1937, then about sixty years of age. Her will and codicils thereto were written while she was in a hospital in Louisville, the will being dated May 20, and the (signed) codicil December, both in the year 1936.

So much of Miss Lane's will as is conceived to be pertinent to a discussion of the case is copied, as is the codicil:

"To my sister Mary Railey, I leave the income of my interest in Woodford County farm and stock thereon during her life.

"To my brother S. B. Lane I bequeath $3,000.00 subject to no debt. After my funeral expenses & marker for my grave are paid for if there be sufficient cash then said sister is to receive $3,000.00 also. If there is then any over it goes to my brother. My furniture and ornaments are to go to my sister during her life—at her death it goes to my nephew, W. N. Lane—if he marries—otherwise it goes to Nancy and Louisa Hoch (my great nieces). My diamond ear rings are to go to my sister during her life—at her death they are to go to Nancy Lane Hoch. If I have not sufficient funds at the time of my death, then my two diamond rings are to be sold—I value them at $300.00 each. At the death of my sister, one-half of proceeds of my interest in Woodford County farm goes to my nephew W. N. Lane his lifetime—if unmarried—at his death it goes to Nancy Lane Hoch. The other half goes to Nancy Hoch and Louisa Hoch.

"It is my desire that they keep the farm as it is a safe investment, and Hunter Railey run same as long as he desires—W. N. Lane is to receive one-half of my part of land as well as proceeds as long as he lives—Nancy and Louisa Hoch are to receive the other half.

"My niece Mary D. Lane has already received much from my sister Mary McConnell so I am leaving it to her daughters instead. I bequeath her one dollar ($1.00) in natural love and affection.

"This is in my handwriting and does not require any witness—any one who attempts to break this will or raise a disturbance over it is to receive nothing. S. B. Lane and Hunter Railey are to be administrators without pay.

"Bessie B. Lane,
"Norton Infirmary,
"Louisville, Kentucky.
"May 20, 1936."

"Codicil to Will—Whatever I have left my nephew W. N. Lane is to go to children of *his sister (my niece)* after the death of *my sister*, Mary Railey, and *my brother*, S. B. Lane.

"A change in his (this nephew's condition)

warrants this change in my will. Given under my hand this 15th day of December, 1936.

"Bessie B. Lane."

On October 30, 1936, testatrix wrote another codicil to her will, but failed to sign it. It undertook to distribute certain personal articles, and was carried out by agreement of parties, as will be noted by the stipulation upon which the case was finally submitted.

The petition (in form of the declaratory judgment proceeding) was filed by S. B. Lane and W. H. Railey, individually and as executors of the will. The defendants were Mary Crit Lane Railey, a sister, the wife of W. H. Railey (in the will called Hunter), co-executor of the will, Mary D. Lane Hoch (in the will called Mary D. Lane), niece of testatrix, who with her husband and children, Nancy Lane and Louisa Hoch, infant defendants, resided in Michigan, and W. N. Lane, a non-resident defendant, to whom certain bequests were made in the body of the will, but who was eliminated in the codicil. He died on December 9, 1937, shortly after the death of testatrix, and his mother, Jennie Lane, intervened as his heir, adopting as her pleading the allegations of the answer of W. N. Lane filed November, 1937.

The petition was filed on September 8, 1937. On November 16, 1937, an amended petition set out the fact that there was another child of Karl and Mary Hoch, Karl Hoch, Jr. In report of warning order attorney, filed January 2, 1938, it is said he was one and one-half years of age.

An inventory filed April 30, 1937, showed that at the time of her death testatrix owned bonds and stocks, and the checks in issue as set out in the stipulation, infra.

The cause was submitted to the court for interpretation of the will upon the following agreed facts:

(1) On the dates of the original will, the unsigned codicil, and the later codicil, testatrix had not exceeding the sum of $25 in actual cash money.

(2) On the date of the will (May 20, 1936) the testatrix had to her credit in the Montgomery bank, $758.31. On October 30, 1936 (unsigned codicil), she had to her credit in the same bank, $2,339.69, and at the date of the codicil (December 15th same year) in same bank, $2,256.34. She did not have on the dates mentioned, or any intervening dates, any other bank deposits.

(3) The check for $2,665.87 represented such amount paid to the executors after the death of testatrix, by W. H. Railey, manager of the farm, being Miss Lane's interest in the proceeds from sales of tobacco and other crops raised on the farm during 1936, all of which were sold by Railey prior to the time of the death of the testatrix, except tobacco to the amount of $681.82, and sold within a week after the death of the testatrix.

(4) Miss Lane owned at the time of her death no property other than that disposed of by her will and codicil, unless it be the following items: 10 Carolina, Clinchfield & Ohio Railway bonds; two bonds 16 Court Street, Incorporated; 20 shares of Louisville Gas & Electric Company; 10 shares U. S. Steel Corporation, and which bonds and stocks are the subjects of this controversy.

(5) Testatrix owed at the time of her death $525, and her funeral expenses amounted to the sum of $625.

Silas B. Lane was seventy-three years old; was married October 1902; his wife is about sixty-one years old; he has no children and never had. An amended petition asserts that Mary Railey was then about sixty years of age.

W. N. Lane, unmarried, was in a hospital at the time the signed codicil was written, and at the date of testatrix' death, with what developed to be an incurable disease; he died in December, 1937.

All articles of personal property, including the stocks and bonds mentioned in the appraisement, were on hand and owned by testatrix at the time of the signing of the will and codicil, and the deposit in the Montgomery Bank, as set out hereinbefore. The Railey checks for proceeds of delayed tobacco sale were not given until after her death.

All indebtedness of testatrix, and all special devises made in the will, the executors have paid, except they have not paid the devises to Silas B. Lane, or to Mary Lane Railey; nor has any residue of cash been distributed.

In the division among the devisees of the tangible personal assets mentioned in the unsigned codicil, all have been delivered, as directed, by agreement of the parties, except that the diamond ring, mentioned therein as having been given to Mrs. Annette Lane, is subject

to disposition under the will, or as the parties may subsequently agree. The allegations of the petition were admitted as being true, except in so far as same might conflict with the terms of the stipulation.

It is the contention of S. B. Lane that under the will the bank deposit, $2,032.09, the checks of $2,665.87, the $15 and all the stocks and bonds, should be and were intended by testatrix to be treated and disposed of as "cash" and be distributed as follows (after debts and funeral expenses): To S. B. Lane, $3,000; to Mrs. Railey, $3,000, and to S. B. Lane the balance thereof. He further claimed that if it be determined that stocks and bonds are not to be construed as "cash" then after expenses are paid out of the items $2,032.09, $2,665.87, and $15 he should receive $3,000 and the balance applied to the Railey bequest of $3,000. He also claims that under the codicil, in case he should survive his sister, he is entitled to one-half of proceeds arising from the Woodford County land during his survivorship.

Mrs. Railey contends that the stocks and bonds, and two checks, should not be considered as "cash," nor should they, nor the proceeds therefrom, be distributed according to the method set out by S. B. Lane. As to the check for the proceeds from the farm, sale of stock and crops, she contends that the will devised same to her. In reference to the stocks and bonds, and bank deposits, she contends that Miss Lane's will makes no disposition thereof.

W. N. Lane and Mary Lane Hoch took the position that the stocks and bonds were not to be considered as "cash" under a proper construction of the will, since she "used the word in its ordinary sense," and that as to these items Miss Lane died intestate. They further contend that the bank deposit and the checks to executors should be treated as, and included in the word "cash," and that after payment of debts, funeral expenses and the payment of the devise to S. B. Lane, the balance of these cash items should be applied to the debt of Mary Railey, but that she would be limited to the balance of such "cash" after the payment to S. B. Lane. They assert that under the codicil S. B. Lane would not in any case, be entitled to the proceeds arising from the operation of the Woodford County farm, but that after her death the title would vest in the children of Mary Lane Hoch.

The warning order attorney, first answering for Mary Lane Hoch and her husband, and Nancy and Louisa, their children, mentioned in the will and codicil, takes the same position as did W. N. Lane and Mary Lane Hoch. As to the claim of interest in the proceeds of the farm after the death of Mary Railey, during his survivorship, he contends that upon the death of testatrix, the children named became the owners in fee of her interest in the tract, subject only to the life interest of Mrs. Railey in the income from the farm.

It developed during the progress of the suit that another child had been born to Mary Lane Hoch; Karl Hoch, Jr., said at the time of the answer for him to be 1½ years old, and in which answer he contended that the three infants became the owners of the testatrix' one-half interest in the farm, subject to the use of Mary Railey during her life; Nancy to take five-twelfths; Louisa five-twelfths, and Karl two-twelfths, this, under the provisions of the will, that W. N. Lane should have one-half interest at her death, and Nancy and Louisa the other half, as the codicil recites: "Whatever I may have left my nephew W. N. Lane is to go to the children of his sister, my niece, after the death of my sister Mary Lane Railey and my brother Silas B. Lane."

The cause being submitted on pleadings, exhibits and the agreed facts, the court adjudged:

(1) That S. B. Lane was bequeathed the sum of $3,000, which the executors will pay; "that his contention that the bonds, stocks and personal chattels, money owing the testatrix at her death (other than her deposit in bank) are cash as the term is used in the will * * * is hereby denied; that S. B. Lane took nothing as respects said securities and chattels, but the same constitute undevised estate, with respect to which testatrix died intestate."

(2) That S. B. Lane took no estate present or in remainder in the real estate of testatrix, but her one-half interest passed at her death to Mary Crit Railey for life, with remainder upon her death, one-fourth (one half of interest of testatrix) to her grand nieces, Nancy Hoch and Louisa Hoch, the other one-half of said half to the children born and to be born to the sister of W. N. Lane, viz., Mary Lane Hoch; said interest is not to be alienated during the life tenance of said Mary Railey.

(3) That the bequest of $3,000 to Mary Railey was contingent upon there being that sum left after payment of funeral expenses and the marker. Unless such sum was on hand in cash the bequest fails, and the defendant Mary Railey takes nothing because thereof.

The bonds and the one-half of the Richardson note; the unsold tobacco on hand at the time of testatrix' death; the cash in bank, (about $25), and the proceeds of farm products paid to the executors after the will was probated (some $1,984.95), all constitute property as to which Bessie B. Lane died intestate. The proceeds of same are to be (and have partly been) applied to the payment of debts of testatrix, her funeral expenses and marker for her grave, and the costs of administration. Any balance is hereby adjudged and the executors are directed to pay to Silas B. Lane one-third; to Mary Lane one-third, to Mary D. Hoch, one-sixth; and to Mrs. Jennie Lane, mother of W. N. Lane, one-sixth thereof.

To this judgment, Silas B. Lane, plaintiff, excepted, prayed and was granted an appeal, and he alone is before this court, contending that the court was in error in so far as his asserted rights were affected by the decree.

There is no longer any doubt, and as counsel apparently agree, as to the soundness of the rule that in construing a will, each and every provision thereof should be considered and, if possible, given effect; to harmonize any apparently inconsistent provisions to give effect to each and all; to survey the entire document so as, if it can be done, to ascertain the intention of the maker. Thomas Ex'r v. Marksbury, 249 Ky. 629, 61 S. W. (2d) 282; Bowman v. Morgan, 236 Ky. 653, 33 S. W. (2d) 703; Whittaker v. Fitzpatrick, 268 Ky. 120, 103 S. W. (2d) 670, and cases cited.

Likewise it is well established that—as appellant contends—the maker of a will is presumed thereby to have disposed of all his property; in other words, the presumption against partial intestacy is indulged, and doubts or ambiguities must be resolved against intestacy. Breckinridge v. Breckinridge's Ex'rs, 264 Ky. 82, 94 S. W. (2d) 283; Davis v. Bennett's Ex'x, 272 Ky. 674, 114 S. W. (2d) 1150; Andrews' Ex'x v. Spruill, 271 Ky. 516, 112 S. W. (2d) 402, and cases cited in 19 Kentucky Digest, Wills.

Counsel for appellee contends that unless a will is ambiguous in its own language, there is no room to call into play the first rule stated, Marshall v. Kent, 210 Ky. 654, 276 S. W. 563, and other cases cited, and that in case of ambiguity in the terms of the will, the rule is that it will be presumed that the testator intended to dispose of his entire estate by will, unless from the whole will and attendant circumstances the contrary is deducible, and that such presumption is always rebuttable. Bain v. Hardin, 223 Ky. 792, 4 S. W. (2d) 745. And further that the indulged presumption disappears when it is apparent that some part of the estate is not disposed of. Walters v. Neafus, 136 Ky. 756, 125 S. W. 167.

It may be that with regard to the matter we are to determine there is a lack of patent ambiguity in the ordinary sense of the term, yet from the position taken by plaintiffs and other parties, and by counsel, there is considerable doubt as to the application and intended meaning of one word, when construed with others in the will, to raise a doubt. "If there be two things to which the language of a writing may indifferently apply, there is ambiguity." I Greenleaf on Evidence, Section 279; Wharton on Evidence, 937. There is sufficient doubt presented here to permit us to apply the rule that the presumption prevails that testatrix was undertaking to dispose of her entire estate. Goode v. Bonta, 267 Ky. 739, 103 S. W. (2d) 266; Corn v. Roach, 225 Ky. 725, 9 S. W. (2d) 1074; Breckinridge case, supra.

As we observe the will, there was no residuary clause; by this omission it may be readily conceived that she fully intended to dispose of all her possessions, and had done so. Neither did she omit any of her kindred whom she conceived to be entitled to her beneficences. It is true she did not devise to her niece any appreciable amount; she mentioned her name, and gave very sensible and, perhaps to her, sufficient reasons why she was not made to share in the estate to a greater extent.

At the time of the codicil she apparently had reason to believe that her nephew W. N. Lane would not live to enjoy what she had first intended for him, and very specifically redevised what had theretofore been allotted to him, to her two nieces.

Reading the entire will, it cannot be so construed as to lead to the conclusion that it was Miss Lane's in-

tention that the niece should receive from her estate any more than was provided, and by no means can we conclude that she intended that the mother of W. N. Lane should inherit any portion of her estate. Yet under the decree of the chancellor these parties would share in a substantial portion.

Getting down to the controversial question, it is admitted that the word "cash" in its ordinary use, and perhaps technical sense, may be said to mean currency, coin, specie, or ready money, "but also, less strictly, bank notes, sight drafts, or demand deposits at a bank." Websters'. It is synonymous with "money." But in construing and applying the word in the instant will, and undertaking to reach the intention of testatrix, we are not required to apply the strictly technical meaning to the word, if we be, as we are, of the belief (from reading the will) that testatrix desired to dispose of her entire property, and not to leave more than half thereof to be distributed under the statute.

As we read the stipulation, testatrix at the time she wrote her will had only $25 in "technical cash" or currency. She had at that time $758.51 in bank. If this was a credit, not a demand deposit, it was not technically cash. On the date of the codicil (December 1936) she had to her credit $2,256.34. She could not reasonably have anticipated what would come to her from the farm operation in 1936.

The agreed facts show that when she wrote the codicil she had the sum named, though it was much less at the other times mentioned, yet she provided (after funeral and other expenses were paid) that $3,000 should be paid to her brother, and a like amount to her sister, and "if there is any left over, it goes to my brother." Most assuredly when she made these devises of a greater amount than "technical" cash, she had in mind the stocks and bonds, or the proceeds from a sale thereof, and about the value of which she (like others) had little fixed or definite knowledge.

It is not difficult for the court to conclude that testatrix used the word "cash" as relating to her stocks and bonds, bank credits, and such personal intangible property as might be readily converted into "cash" or "money." We find cases wherein this court has given its construction of the word "money" and "moneyed estate," holding that these words were, when the whole

will was surveyed, intended to embrace stocks and bonds.

In the case of the Trustees of the, Catholic Church of Taylorsville v. Offutt's Adm'rs, 6 B. Mon. 535, 45 Ky. 535, we held that "moneyed estate embraced not only testator's money on hand at the time of his death, but also money due him by bond, note or otherwise, all of which was decreed to the wife."

In the case of Pohlman v. Pohlman, 150 Ky. 679, 150 S. W. 829, testatrix devised to her husband, Henry Pohlman, "all money I may have on hand at the time of my death," requesting him to put a tombstone at her grave. Testatrix had left bonds to the amount of $4,000 and a note of $384. The issue came up between the father and a child, and the question submitted was whether the word "money" was intended to include the bond and note. If it did not, "then she died intestate as to this property, because no disposition of it is made in the will that in express terms disposes by name of all the other property that she owned." It may be noted that in that case we said:

"The word 'money' in its usual and ordinary acceptation means gold, silver, or paper money used as a circulating medium of exchange, and does not embrace notes, bonds, evidences of debt, or other personal or real estate, and this popular and well understood meaning should be given to the word when used in a will, unless, from a consideration of the entire instrument it was intended by the testator to have a broader meaning and to include notes, bonds and other securities. Mann v. Mann, 14 Johns. 1, (N. Y.) 7 Am. Dec. 416.

"Aside from the fact that under well-settled rules of construction a will will be construed to dispose of the entire estate of the testator, if this can be done consistently with its provisions when considered as a whole, we think it manifest that the testatrix intended, in the first clause of her will, to give to her husband all of her personal estate, which consisted only of money, bonds, and a note, and that she used the word 'money' under the belief that it included the securities mentioned. We say this with confidence, for if she had not so intended, and did not so believe, she would have made some specific mention of the bonds and note, as these constituted

the major portion of her estate, and it is not reasonable to infer that she purposely omitted mention of the securities with the desire not to dispose of them in her will in which she specifically mentioned the other property she owned and gave explicit directions as to how she desired it to go. To give the word 'money' in this will its popular meaning would, we think, defeat the purpose of the testatrix, who clearly intended to dispose of her entire estate, and that her husband should have all that she possessed, except the real estate, in which he was given a life estate, in the event he died before the child; that there is ample authority to support the construction that the usual meaning of the word 'money' should be enlarged to embrace evidences of debt when this interpretation is necessary to carry into effect the intention of the testator as gathered from the will and to prevent a partial intestacy not intended may be seen by an examination of the cases of Catholic Church v. Offutt, 6 B. Mon. 535; Decker v. Decker, 121 Ill. 341, 12 N. E. 750; Jenkins v. Fowler, 63 N. H. 244; Gillen v. Kimball, 34 Ohio St. 352; Sweet v. Burnett, 136 N. Y. 204, 32 N. E. 628; Fulkeron v. Chitty, 4 Jones Eq. (57 N. C.) 244; Page on Wills, Section 496." See Dickson v. Dickson, 180 Ky. 423, 202 S. W. 891, L. R. A. 1918F, 765.

True, as counsel for appellee says, the court did not rest its application of the word money as ordinarily including bonds and notes, but on the deducible fact that testatrix meant the term to include every form of personal property; the construction being considered as an aid in concluding that testatrix would have otherwise died intestate as to the bonds and note. We do not so read the opinion as to make it infer that "money" would include all other personal property, but to relate only to the note and the several bonds. Here the testatrix had devised, by will and (unsigned) codicil, all of her other personal estate, unless trivial items were omitted. We may, and do, apply the same reasoning indulged by the court in the Pohlman case, as an aid in determining that testatrix intended to devise all of what she no doubt thought of in terms of cash or money, and that she did not pause in writing her will to make nice or technical distinctions.

In the case of In re Ingham's Estate, 315 Pa. 293,

172 A. ....2, A. L. R. 510, testatrix provided in her holographic will that "what is left of my money after my debts are paid, I wish given to The Baptist Home, on the Roosevelt Boulevard, Pennepack Circle." Testatrix was unmarried, but left surviving as her next of kin several cousins who contested the will, contending that the word "money" or words "my money," included only "cash." Her property at death consisted of cash on hand, $2,200; stocks and bonds of the value of $24,000 and in interest in a trust fixed by her father's will of $13,000, which she did not know she would be entitled to in the event she died without issue. The auditing judge awarded to the church the entire residuary estate (after payment of funeral expenses, debts and specific devises), including the trust estate, the latter properly, on the ground that it was included in the final dispository clause, although testatrix did not know of her right to the property. It was contended by the cousins who appealed from the judgment of the Orphans' Court (Phil) that the words "my money" should be construed in the sense of "cash;" that neither the context of the will nor surrounding circumstances permitted them to be given a broader meaning, and that in no event could the words be construed to include the trust property; on this point contending that the will could not operate to pass property which she was unaware that she owned.

Leaving out the "trust property" for the sake of discussion here, and looking only to the court's construction of the use of the words "my money" as applicable to her stocks and bonds, we quote from the Pennsylvania Supreme Court case, supra, which adhered to the lower court's ruling:

"It is sufficient to point out that under our cases the word 'money,' when used in a will, is to be construed in the broad sense of wealth or property, instead of in its narrow sense as cash, only where the context of the will and the circumstances surrounding its execution require that it be so interpreted in order to give effect to the testator's intention. Jacobs' Estate, 140 Pa. 268, 21 A. 318, 11 L. R. A. 767, 23 Am. St. Rep. 230; Levy's Estate, 161 Pa. 189, 28 A. 1068; In re Dodson's Estate, 253 Pa. 344, 98 A. 617. Ostrom v. Datz, 274 Pa. 375, 118 A. 313; Talbot v. Anderson, 292 Pa. 454, 141 A. 256; In re Williamson's Estate, 302 Pa. 462, 153 A. 765. See In re Arnold's Estate, 240 Pa. 261, 87 A. 590, L. R.

A. 1918A, 220, Ann. Cas. 1915A, 23. Here it is apparent that the testatrix employed the word in its wider sense. Although the will contains pecuniary legacies totaling $7,000 and there is no source indicated from which they are to be paid, at the time it was executed the testatrix' bank deposits amounted to only $3,100. The inference is unavoidable that she considered all her property as a single consolidated mass, intending that her personal property not specifically bequeathed should be converted into cash and the pecuniary legacies paid from the fund thus established.''

In the case of Fulkeron v. Chitty, 57 N. C. 244, a bequest of the ''rest and residue of my monies,'' was held to pass bonds where the ''pecuniary legacies, amount[ed] in the whole to much more than the small amount'' testatrix had on hand in cash.

In Baldwin v. Baldwin, 107 N. J. Eq. 91, 151 A. 741, 742, the testatrix gave a son $5,000 ''provided I have at the time of my decease the sum of Ten thousand dollars or more in cash after paying all my debts, if the sum is less than ten thousand dollars, * * * the cash shall be divided'' as per instructions between. the two sons. It appears that as to shares of building and loan stock, testatrix would have left the same undisposed of, if same be not construed to mean ''cash,'' and it·was so construed. See also In re McKendrie's Estate, 150 Misc. 665, 271 N. Y. 228. Corporate stock was held to pass under a bequest of ''all my moneys'' in a will wherein in addition to such bequest there were specific bequests of household articles, the court deciding that it was evident ''that testatrix intended to divide her property into two classes.'' The conclusion reached in the cases cited are fortified by the rulings in many similar cases annotated under In re Ingham's Estate, supra.

It requires us to resort to no strained construction to hold, that in viewing the entire will, the facts and circumstances evidenced by the stipulation, that Miss Lane intended in her will to dispose of all her property; and to conclude that when she used the word ''cash'' (and later ''funds'') she intended for the items in controversy to be treated as cash.

The case of Mutual Life Insurance Company v. Spohn, 170 Ky. 721, 186 S. W. 633, extended in the same case in 172 Ky. 90, 188 S. W. 1078, is offered by appellee

as being persuasive on the question at bar, to the extent of demonstrating that we construed the words "money in bank" not to include proceeds of an insurance policy, and applying to the instant case when the word "cash" was used, it meant that and nothing else. We held the construction of the term "money in bank" as applying to such money as testator had in bank at the time of his death. It will be noted that the court in that case gave a much broader meaning to the word money (as used in testamentary documents than we have herein).

We said:

"If the will in question [Spohn's] exhibited an; intent on the part of the testator to devise all of his property to his wife, the fact that in describing his property he omitted some portion thereof would not defeat such intent."

Counsel for appellant contends that under the will and codicil he is entitled to a life interest in the proceeds from the operation of the farm. Though so contending, it is admitted that any contingent interest therein is remote, because of the likelihood that Mrs. Railey will outlive appellant. Appellant's life expectancy is approximately eight and one-half years, while Mrs. Railey's expectancy is about sixteen years.

It is a little difficult for us to reach the conclusion that testatrix intended by her will to devise to appellant any interest in the land, or in the proceeds thereof after the death of Mary C. Railey. The only language upon which such an intent might be based is that contained in the codicil.

A casual reading of the will discloses, as we view it, a clear and unequivocal intention on the part of Miss Lane to vest, first, in Mrs. Railey the entire proceeds from the farm "during her life." At her death (not the death of Silas B. Lane) one-half of the proceeds from farm were to go to W. N. Lane, if unmarried, and at his death "it goes to Nancy Lane Hoch; the other half goes to Nancy and Louisa Hoch." Their rights to the entire proceeds of the farm depend upon two contingencies, the death of Mrs. Railey, and the death (if at the time unmarried) of W. N. Lane.

The clause following that from which the excerpts above are taken might, under another situation, evidence

some doubt. as to whether Mary Railey was to receive the entire proceeds of the farm during her life, but under the codicil W. N. Lane's death obviates the necessity of discussing this question.

We cannot construe the language used here as evincing an intent to vest in S. B. Lane the remainder interest in farm income, in case he survive his sister. We cannot take up the words "after the death * * * of my brother" in the light of the specific devise of the farm proceeds, and make them read so as to give S. B. Lane any contingent interest in the farm proceeds.

We should not be, nor are we called upon to, explain why testatrix interpolated the name of her brother. She had not included the name, or evidenced any such intent in any of the three clauses in the will, in which she was dealing with the farm proceeds. We think it would do violence to the accepted rules of construction, and the manifest intention of testatrix, for us to conclude that S. B. Lane is entitled to any interest in the remainder of farm proceeds after the death of Mrs. Railey, and on this point the court correctly adjudged. However, the chancellor was in error in holding that Miss Lane died intestate as to the items in controversy.

Judgment is reversed with directions for a judgment in conformity with this opinion.