Andrew's Ex'x v. Spruill et al.

Masonic Widows and Orphans Home and
Infirmary v. Same.

(Decided Nov. 5, 1937.)

TAYLOR & MILAM for appellant Fannie M. Bryan, executrix.

RICHARD P. DIETZMAN for appellant Masonic Widows & Orphans Home.

COLEMAN TAYLOR and FELTS & LYNE for appellees Ruth Weller Spruill and others.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming in part and reversing in part.

These two appeals have been prosecuted from a judgment entered in an action begun by the executrix of the will of Lena Raetz Andrews for a construction of that will and a settlement of her estate. Ruth Weller Spruill excepted to the judgment in the trial court, but has prosecuted no appeal or cross-appeal. We shall dispose of the two appeals in one opinion.

On November 3, 1935, Mrs. Lena Raetz Andrews died, a resident of Logan county, Ky., leaving a holographic will which is made up of short sentences, usually having no direct connection with, or any great de-

pendence on, each other, and for our own convenience we have adopted these as sections and identified them. by letters so that we can more easily refer to them, and,. as thus identified, this will is:

"Mrs. P. C. Andrews
"165 East Fourth Street,
"Russellville, Ky.
"Oct. 5, 1935.

"Last Will and Testament of Lena R. Andrews written by my own hand. Being of sound mind I hereby will and bequeath the following:—

"Section a. All just debts to be paid. Vault to be built on Fred Raetz lot of suitable proportions to contain bodies of Fred Raetz, Mary S. Raetz, my parents, Philip C. Andrews, my dear beloved husband, and myself. Vault to face the East, stone and bronze doors. In suitable letters above the door the name, Raetz-Andrews.

"Section b. My interest in Andrews store building I leave to Ruth Weller Spruill to keep or dispose of and one of my diamond rings—choose.

"Section c. To Philena Mitchell Wilson, I leave my diamond brooch and diamond ring, she may choose the ring, my peach blow vases or White vases—she may choose, and my Stockdale chairs.

"Section d. To Mary Alma Andrews the spanish vase she always wanted.

"Section e. To James Harper, my faithful. servant, three hundred dollars ($300.00).

"Section f. The red brick cottage, I leave to Gertrude Nettie Stuart, Beaumont, Texas to retain. or sell.

"Section g. To Phillip Faison Howe, Cordowa. Ala., I give the oil portrait of my husband, Philip C. Andrews, and the diamond ring of my husband, Philip C. Andrews.

"Section h. To my dear friend Louise Harrison Cary any article in my home she may select.

"Section i. To Fannie Bryan, cousin dearly loved, I leave my home, bank building of Citizen National Bank rental from same, at her death, to Ruth Weller Spruill her life time if living at the

time of Fannie Bryan's death, if not to be sold to the highest bidder and funds to be given to the Masonic Widows and Orphans Home in Louisville, Ky., in memory of my father, Fred Raetz, Mason.

"Section j. My home place to be sold at the death of the two named in the foregoing paragraph, Fannie Bryan and Ruth Weller Spruill—the funds to be given to the daughter of Ida Weller married name not known by me.

"Section k. My Haviland china and any other possession for dining room she may select.

"Section l. My Southern Deposit Bank Stock, shares of Kentucky Utilities and Louisville Gas & Electric Bonds and Stocks to be used for building my vault mentioned in first part of will.

"Section m. Property on Fourth street, two frame houses to be sold, the funds to be used if needed to help build vault—the red brick cottage to my dear cousin, Gertrude Stewart, to be retained or sold as she may desire.

"Section n. My silver to Elizabeth Sperling of Beaumont, Texas.

"Section o. To Bettie Howe, Cardowa, Ala., any of my jewelry she may name or articles of furniture in my home.

"Section p. The furnishing of my home to be given to any of my friends, or relatives that may express a desire for them as many pieces as they want.

"Lena Raetz Andrews, (Written by my own hand).
"Sept. 30th, 1935.

"Section q. Fannie M. Bryan is named Executor of this my last will and testament, any one breaking this will is debarred from same, with the payment of $5.00.

"Lena Raetz Andrews."

Mrs. Andrews was formerly Miss Lena Raetz, and some 35 or 40 years ago she married Phillip Cook Andrews. They never had any children, and on February —, 1932, he died intestate and his property passed under our statutes of descent and distribution to his brother,

C. W. Andrews of Russellville, Ky., and his half-sister, Mrs. Lula G. Brown, of Ponoma, Cal., subject of course to the rights of Mrs. Lena Raetz Andrews as the widow of Phillip Cook Andrews.

## The Andrews Store Building.

Phillip Cook Andrews owned, at his death, a building in Russellville, Ky., wherein for years a drug business had been conducted by him and by his father before him, and this building was generally known as the Andrews Store Building. After the death of Phillip Cook Andrews, this building was rented to C. W. Andrews, and T. W. Wood, for $40 per month, of which $13.33 was paid to Mrs. Andrews for the rent of her dower interest, and $17.78 was paid to C. W. Andrews, and $8.89 to the half-sister Mrs. Brown. The monthly receipt of $13.33, one-third of this rent, probably caused Mrs. Andrews to believe she owned one-third of this building, and she frequently spoke of owning one-third of it, and in her will treated her interest in this building as if she were the undisputed owner of one-third of it in fee.

## Mrs. Andrews' Heirs.

Mrs. Andrews was the only child of Fred Raetz and Mary S. Raetz. Fred Raetz came to this country from Germany. Nothing is known of his people, and they are proceeded against as the unknown heirs of Mrs. Andrews.

George Weller and Nancy Weller, the maternal grandparents of Mrs. Andrews, are both dead, but quite a progeny survived them, and they have been made parties to this litigation. The names and relationship to the testatrix of the heirs and devisee principally interested are: Ruth Weller Spruill, of Battle Creek, Mich., only child of Thomas K. Weller, deceased, a maternal uncle; Fannie Bryan, of Russellville, Ky., one of the three children of Sarah Weller Bryan, deceased, a maternal aunt; Gertrude Nettie Stuart, of Beaumont, Tex., one of the six children of James Monroe Weller, deceased, a maternal uncle; Mary Elizabeth Sperling, of Beaumont, Tex., another daughter of James Monroe Weller; Edna Earl Terry Schultz of Jennings, La., only child of Ida Weller Terry, one of the children of James Monroe Weller.

## Construction of Will.

The chancellor considered this will section by sec-

tion, and as a whole, which is proper, and we shall state his construction of it, and follow that by our conclusions:

## Powers and Duties of Executrix.

The chancellor from a consideration of section a and of the whole will found and adjudged the powers and duties of the executrix to be as follows:

"It is adjudged by the court that it is. the duty of the executrix, first, to pay all the debts of the testatrix and then to build on Fred Raetz's lot in the cemetery in Russellville, Ky., a vault with stone and bronze doors, which in the judgment of said executrix, is suitable to contain the bodies of Fred Raetz, Mary S. Raetz, Philip C. Andrews and the testatrix, and to this end said executrix is hereby authorized and. directed to sell all stocks and bonds owned by the testatrix at the time of her death, including the stock in the Southern Deposit Bank, the Kentucky Utilities stock, the Louisville Gas & Electric stock, the Electric Bonds and Shares stock, and any and all other stocks owned by the testatrix at the time of her death, and she is fully empowered to vest in the purchaser a good title to the same.

"It is further adjudged by the court that the executrix be, and she is hereby fully authorized and empowered to sell either privately or. publicly, all cottages owned by the testatrix situated on Fourth Street, in Russellville, Kentucky, except the red brick cottage which was devised to said Nettie Gertrude Stuart, and same to be sold upon such terms as the executrix may deem reasonable, or for cash, and said executrix is hereby empowered and authorized to execute a deed to the same and vest in the purchaser, or purchasers, a good and indefeasible title to said property, and to make the usual covenants of title incident to sales of real estate. * * *

"It is further adjudged by the court that the executrix is fully authorized and directed to carry out the terms of this judgment and sell and dispose of the property herein ordered to be sold and disposed of, and any personal property which testatrix owned which is not disposed of herein, and directed to deliver to all of said devisees and legatees the

property herein adjudged to be delivered to them in the manner herein set out, and to do each and every other thing necessary and requisite to accomplish the purposes of said will."

After carefully considering that, we approve it, and it is affirmed.

### Section b.

Under section b of this will, Ruth Weller Spruill, exercising what she deemed her first right to choose, selected a diamond ring described in this record as "The Horseshoe in Old Gold," and in her answer set up her selection and claimed that ring. She also asserted in her answer she was one of the heirs at law of the testatrix, and that testatrix believed she owned one-half of the Andrews Store Building, and intended to and did devise to Mrs. Spruill a fee-simple title to such one half, whereas she only owned a dower interest therein or one-third of it for life, and such interest terminated at the death of the testatrix, and in view of such failure of title, Mrs. Spruill asked that the court have the "Andrews Store Building" appraised, and that she have contribution from the other legatees, heirs at law, beneficiaries, etc., according to the amount received by them to the extent of a sum equal to one-half of such appraised value. The proof taken indicated it was one-third of this "Andrews Store Building" which Mrs. Andrews believed she owned, and the chancellor said this, in construing this section of this will:

"It is adjudged by the court that the said Ruth Weller Spruill shall have the first right to choose one of said diamond rings owned by the testatrix at the time of her death. It further appearing to the court that Ruth Weller Spruill would have been one of the heirs at law of the testatrix, and that testatrix owned only a dower interest in one-third of the Andrews store building, and that the testatrix, in point of fact, did intend to devise to said Ruth Weller Spruill a one-third interest in the Andrews Store Building, which the testatrix believed that she owned in fee, but in fact she only owned a dower interest therein, and it appearing from the proof that said Andrews store building is of a value of $6,000.00 and that one-third thereof would be $2,000.00, and that on account of the fact that

the title to testatrix has failed in said building attempted to be given to Ruth Weller Spruill, it is adjudged that after the payment of all the specific devises, court costs, costs of administering said estate, that the said Ruth Weller Spruill shall be paid by executrix of said estate $2,000.00, but in the event there is not a sufficient amount after the payment of said specific devises to pay the same in full, that the executrix shall pay only such sum as is left after payment of the debts of said testatrix, the building of the vault, the payment of all specific bequests, costs of administering the estate, and the court cost incident to the settlement of same.''

In view of section 2077, Ky. Stats., which has been in force since July 1, 1852 (see Rev. Stats. ch. 23, sec. 6), this is approved and affirmed, and Mrs. Spruill is awarded the ring she selected. It is strenuously insisted that as Mrs. Andrews had only a life estate in one-third of this Andrews Store Building, which terminated when she died, that her devise of this to Mrs. Spruill is void; and in support of this contention we are cited to Berry v. Heiser, 271 Ill. 264, 111 N. E. 99; Fidelity National Bank & Trust Co. v. Hovey, 319 Mo. 192, 5 S. W. (2d) 437, 73 A. L. R. 1228; Minuse v. Cox, 5 Johns. Ch. N. Y. 441, 9 Am. Dec. 313; 28 R. C. L. p. 347, sec. 342; but in view of our statute we do not regard them as applicable. See Jones v. Bigstaff, 95 Ky. 395, 25 S. W. 889, 15 Ky. Law Rep. 821, 44 Am. St. Rep. 245; Siler v. Jones, 110 S. W. 255, 33 Ky. Law Rep. 317; Pusey's Trustee v. Wathen, 90 Ky. 473, 14 S. W. 418, 12 Ky. Law Rep. 425.

### Section c.

Mrs. Philena Mitchell Wilson, in her answer, asserted her right to and selection of the ''Two Peach Blow Vases,'' and ''Four Stockdale chairs,'' ''The Diamond Brooch,'' and her right to choose the diamond ring which she described as ''The Cluster in Old Gold.'' In construing this section, the chancellor held:

''It is adjudged by the court that by the use of this language the testatrix did, in point of fact, bequeath to Philena Mitchell Wilson her diamond brooch and one diamond ring, giving her the right to choose the ring, but her right to choose said ring is inferior to the right of Ruth Weller Spruill, said Philena Mitchell Wilson having second choice of said rings.

"It is further adjudged by the court that the said testatrix, by the use of said language did, in point of fact, bequeath to the said Philena Mitchell Wilson her peach blow vases or white vases, and that the said Philena Mitchell Wilson has the right to choose whether she will take the peach blow vases or the white vases. It is further adjudged by the court that by the use of said language the testatrix did, in point of fact, bequeath to Philena Mitchell Wilson her Stockdale chairs."

This is modified to the extent that Mrs. Wilson will be bound by the selection she has made, and, as so modified, it is affirmed.

## Section d.

In construing section d, the chancellor held this, which is now affirmed:

"It is adjudged by the court that the testatrix did, in point of fact, bequeath to Mary Alma Andrews the Spanish Vase she owned at the time of her death."

We also affirm this which the chancellor said of section e:

"It is adjudged by the court that the testatrix did, in point of fact, bequeath to James Harper, her servant, $300.00 in cash."

## Section f.

A red brick cottage is referred to in section f, and also in section m of this will. The proof shows, and the chancellor found, that the testatrix had but one red brick cottage, and that by this section of her will she vested Gertrude Nettie Stuart with a good and indefeasible title to this property, and that we affirm.

## Section g.

It was adjudged by the court that by the language of this section the testatrix did, in point of fact, vest the absolute title to said portrait and the diamond ring of her husband in the said Phillip Faison Howe, and that he is the owner of same.

## Section h.

Mrs. Louise Harrison Cary in her answer claims, under section h, a table which is there described thusly:

"One marble top, medium size table which has been

designated to the executrix and it is the medium size table which is believed to be walnut and has four legs, which legs make one square pedestal upon which the marble rests.''

In the judgment the chancellor held:

"And it further appearing that said Louise Harrison Cary has selected one table from the home of the testatrix and it is adjudged that by the use of said language and the election of said Louise Harrison Cary that she became and is the owner of said table.'

This is now modified so as to include the above description, and, as so modified, it is affirmed.

Sections i, j, and k.

The chancellor treated and construed these three sections together, and properly so, for they are dependent on each other; and here is the construction he made of them:

"It is adjudged by the court that by the use of this language the testatrix did, in point of fact, devise to Fannie Bryan a life estate in the home place of the testatrix, and also the Citizen National Bank Building, and that the said Ruth Weller Spruill, by the terms of said language, was given a contingent life estate, contingent upon her surviving Fannie Bryan, and in the event she should survive Fannie Bryan, then the said Ruth Weller Spruill shall have a life estate in the home place and the Citizen National Bank Building.

"It is further adjudged by the court that by the use of said language the testatrix provided, and in point of fact, devised a contingent remainder interest in the Citizen National Bank building to the Masonic Widows & Orphans Home in Louisville, Kentucky, the correct name of which is Masonic Widows and Orphans Home and Infirmary of Kentucky, same being contingent upon the death of Ruth Weller Spruill before the death of Fannie Bryan, but in the event the said Ruth Weller Spruill should survive Fannie Bryan, then the Masonic Widows and Orphans Home and Infirmary of Kentucky shall take no interest in said property and the remainder interest therein shall pass as an undisposed of part of the estate of the testatrix.

"It is further adjudged that Ida Weller is dead, having predeceased said testatrix, and that the said Ida Weller only left one child, Edna Earl Schultz, and that she took under the terms of said will a vested remainder interest in the home place of the testatrix, subject to the life estate given to Fannie Bryan and Ruth Weller Spruill, and further adjudged by the court that the said testatrix, by the language set out above, did, in point of fact devise to the daughter of Ida Weller, Edna Earl Schultz, her Haviland china, and any other possession for dining room not heretofore bequeathed, and that the said Edna Earl Schultz has a right to choose any piece of dining room furniture which is not bequeathed by the other provisions of said will."

As to the disposition made of the home place and the Haviland china, and some piece of the dining room furniture, we agree fully, and that part of this judgment is affirmed; but we do not agree to the disposition adjudged to be made of the Citizens Bank Building after the death of Fannie Bryan and Ruth Weller Spruill.

There are three contentions made as to the disposition of this Citizens Bank Building after the deaths of Fannie Bryan and Ruth Weller Spruill. One is that it is undevised property as the chancellor found; another is that by willing the rental from this bank property to Fannie Bryan for her life, then to Ruth Weller Spruill for her life, without making, as Mrs. Spruill contends, any further disposition of it, that the estate of Mrs. Spruill was enlarged and became a fee, in support of which contention section 202, p. 238, of 28 R. C. L., is cited; and the other contention, made by the Masonic Widows and Orphans Home and Infirmary of Kentucky, is that after the death of Fannie Bryan and Ruth Weller Spruill, this property goes to it. Because of well-settled rules of construction as exemplified in former decisions, we are not disposed to adopt the first contention, the one adopted by the chancellor, because when a testator attempts to dispose of his entire estate, especially where it is done with the meticulous care manifested in this will, the intention to dispose of his whole estate is presumed, and this presumption is only overcome where the intention to

do otherwise is plain and unambiguous, or is necessarily implied. See Howard v. Cole, 124 Ky. 812, 100 S. W. 225, 30 Ky. Law Rep. 1027; Dickson v. Dickson, 180 Ky. 423, 202 S. W. 891, L. R. A. 1918F, 765; Bourne v. Johns, 233 Ky. 448, 26 S. W. (2d) 13.

Where a will is susceptible of two constructions, the law favors that one which disposes of the entire estate of the testator. Hodge v. Lovell's Trustee, 262 Ky. 509, 90 S. W. (2d) 683; Corn v. Roach, 225 Ky. 725, 9 S. W. (2d) 1074 and other cases listed in West's Kentucky Digest Vol. 19, key 449, subject, Wills.

The testatrix specifically limits to her lifetime Mrs. Spruill's enjoyment of the rentals of this property; hence we are bound by that, and are unable to adopt a construction that would enlarge her estate, which leaves for our adoption the third construction proposed. We think we will be helped by copying these sections i, j, and k, as if all written together, as they probably were:

"To Fannie Bryan, cousin dearly loved, I leave my home, Bank Building of Citizen National Bank rental from same, at her death, to Ruth Weller Spruill her life time if living at the time of Fannie Bryan's death, if not to be sold to the highest bidder and funds to be given to the Masonic Widows and Orphans Home in Louisville, Ky., in memory of my father, Fred Raetz, Mason. My home place to be sold at the death of the two named in the foregoing paragraph, Fannie Bryan and Ruth Weller Spruill—the funds to be given to the daughter of Ida Weller Married name not known by me. My Haviland china and any other possession for dining room she may select."

From a study of this we see the testatrix was disposing of her home, this bank building, her Haviland china, and a part of her dining room furniture. She thought of her two cousins, Fannie Bryan, whom she loved dearly, Mrs. Spruill, who had practically been reared in her home, and whom the proof showed she loved as if she were her own child, and Edna Earl Schultz, whose married name she could not recall, but testatrix remembered she was the only daughter of Ida Weller Terry, deceased, whom testatrix knew to be dead and mentioned familiarly as Ida Weller. She

knew Mrs. Schultz had then recently lost her home and its furnishings by fire and was in need, and she reverently remembered her father was a Mason and his attachment to that society, and thinking of all these she wrote what we have copied above. It is our task to find what she meant by what she wrote, not to find what she meant to say, but what is meant by what she did say; and with that end in view we shall separate the provision as to her home, etc., and the provision as to this bank building, which under Buschemeyer v. Klein, 139 Ky. 124, 129 S. W. 551, and section 1155 p. 110 of 69 C. J. we feel we may do. We have done this, and we find this is what she meant by what she wrote:

### Disposition of the Home, China, etc.

To Fannie Bryan, cousin dearly loved, I leave my home for her life, and at her death, to Ruth Weller Spruill for her lifetime, if living at the time of Fannie Bryan's death, and after the death of these two, it is to be sold and the funds to be given to the daughter of Ida Weller, married name not known by me. My Haviland china and any other possession for dining room she (Ida Weller's daughter) may select.

### Disposition of Bank Building.

To Fannie Bryan, cousin dearly loved, I leave the rental from the Citizens Bank Building, and at her death, this rental is to go to Ruth Weller Spruill for her lifetime, if she survives Fannie Bryan, and at the death of these two, it is to be sold to the highest bidder and the funds to be given to the Masonic Widows and Orphans Home in Louisville, Ky., in Memory of my father, Fred Raetz, who was a Mason.

We are not rewriting the will of Mrs. Andrews, we have no power to do that, but we do have the power and the duty to determine what is meant by what she wrote, and we now decide and determine the above is the meaning of what she wrote. She knew she owned this bank building, and was bent upon disposition of it. She had in mind her two cousins who were endeared to her by the time they had spent in her otherwise childless home, and she wanted to make provision for them. She gave to Miss Fannie Bryan the rental until her death, her next thought was of Mrs. Spruill, and she made provision for her and used no uncertain terms, she gave her after Miss Fannie's death the rentals of this building

for her lifetime, that is certain and definite. If testatrix had no intention of making any further or other disposition of this building, there was no need of writing anything else. If she wanted to die intestate as to this building after creating these two life estates, there was the place to stop; but she did not stop, she kept writing, and made provision for honoring the memory of her father by a gift for that purpose.

We now find and adjudge that by this will it is provided that Fannie Bryan shall have and enjoy the rental of this Citizens Bank Building during her lifetime; that Ruth Weller Spruill, if living at Fannie Bryan's death, shall then have and enjoy these rentals during her lifetime; and that, after the death of the survivor of these two, this building shall be sold to the highest bidder, and the proceeds given to the Masonic Widows and Orphans Home and Infirmary of Kentucky. Because the chancellor did not so hold, the judgment in this respect is reversed.

### Section *l* and section m.

These sections were construed in defining the powers and duties of the executrix.

### Section n.

We approve and affirm the chancellor's finding as to section n, which is:

"It is adjudged by the court that the testatrix intended to and did, in fact, bequeath all of her silverware to Elizabeth Sperling of Beaumont, Texas, and the said Elizabeth Sperling is adjudged to the absolute owner of same."

### Section o.

The chancellor made this construction of section o:

"It is adjudged by the court that the testatrix did, in point of fact bequeath to Bettie Howe any or all of her jewelry which had not theretofore been bequeathed, and that the said Bettie Howe has the right to choose all or any part of same which is not bequeathed by the other provisions of said will.

"It is adjudged by the court that the testatrix did, in point of fact, bequeath to Bettie Howe any or all of the furniture which is not heretofore bequeathed or disposed of by the previous provisions

of said will to choose all or any part of the jewelry and furniture in the home of the testatrix.''

Quite an attack is made upon this construction of section o, and it is urged that the chancellor erred in allowing Bettie Howe to come into this home and take any or all the remaining jewelry and furniture after the other beneficiaries had received what was given them, that it was not intended by the testatrix to license Bettie Howe to back a moving van up to this home and load into it everything in the home, and it is urged that the testatrix intended Bettie Howe to select some article of jewelry and some article of furniture just as she intended the others to do, but the will shows the testatrix knew perfectly well how to limit a beneficiary to a single article and usually did so, but in the case of Bettie Howe, she used different language, thus indicating a different intention. As indicative of the intention of the testatrix not to give Bettie Howe everything, section p, wherein the testatrix attempted to dispose of what would be left, is relied on, but we do not interpret that section as overcoming the positive disposition made by paragraph o.

## Section p.

The chancellor made this finding as to section p: ''It is adjudged by the court that by the use of this language the testatrix did not in point of fact make any bequest, and that the same is void for uncertainty as to the beneficiaries, or the objects given, and the same is adjudged to be of no effect whatever.''

As far as it goes, this finding is approved; but the court will modify its finding and include in it directions to the executrix to sell and account to the estate for all the furnishing of this home not taken by Bettie Howe, and to sell and account for any remaining personal property of the testatrix, and, as so modified, it is affirmed.

## Section q.

We approve and affirm the chancellor's construction of section q, which is:

''It is adjudged by the court that by the use of this language the testatrix made Fannie M. Bryan exexutrix of her last will and testament, and that by

the use of said language she also provided that anyone of said devisees, or legatees mentioned in said will who should attempt to contest the same should not take anything under the will other than $5.00."

It is therefore ordered that the judgment be affirmed in part, and reversed in part for judgment as indicated.

The whole court sitting.