GEORGETOWN COLLEGE, Appellant,

v.

John S. ALEXANDER, Andrew B. Alexander, James G. Alexander, Gladys D. Alexander, David Alexander Russell, Julia Russell Leggett, Virginia Lockett Russell, Harriett Donahue, Mary Lockett Ramft, Donald Donahue, III, Stuart Alexander, Jr., and Cordelia Kubale, Appellees.

and

David Alexander Russell, Julia Russell Leggett, Virginia Lockett Russell, Harriett Donahue, Mary Lockett Ramft, Donald Donahue III, Stuart Alexander, Jr., and Cordelia Kubale, Cross–Appellants,

v.

Georgetown College, John Alexander, Andrew Alexander, James Alexander, and Gladys Alexander, Cross-appellees.

Nos. 2002–CA–000651–MR, 2002–CA–000735–MR.

Court of Appeals of Kentucky.

Aug. 29, 2003.

Discretionary Review Denied by Supreme Court Aug. 18, 2004.

Mark T. MacDonald, Karen Greenwell, Tracy Todd Blevins, Karen Greenwell, Lexington, KY, for appellant/cross-appellee, Georgetown College.

Foster Ockerman, Jr., Madeleine Taylor Baugh, Lexington, KY, for appellees/cross-appellees, John Alexander, Andrew Alexander, James Alexander and Gladys Alexander.

Glen S. Bagby, J. Robert Lyons, Jr., Lexington, KY, for appellees/cross-appellants, David Alexander Russell, Julia Russell Leggett, Virginia Lockett Russell, Harriett Donahue, Mary Lockett Ramft, Donald Donahue, III, Stuart Alexander, Jr., and Cordelia Kubale.

Before BAKER, BARBER, and JOHNSON, Judges.

## OPINION

BARBER, Judge.

This appeal involves the construction of a Will and three competing claims to the proceeds from the sale of a tract of land following the life tenant's death. The parties and claimants to the proceeds are: (1) Georgetown College, residuary beneficiary under the Will; (2) the Mattie Anderson heirs, represented by David Alexander Russell, Julia Russell Leggett, Virginia Lockett Russell, Cordelia Kubale, Harriett Donahue, Mary Lockett Ramft, Donald Donahue III, and Stuart Alexander, Jr., who assert that the reversion passes to them by way of intestacy (hereinafter "Cross–Appellants"); and (3) the Harriett Alexander heirs, John S. Alexander, Andrew B. Alexander, James G. Alexander, and Gladys Alexander (hereinafter "Harriett's heirs"), in whose favor the trial court granted summary judgment. Finding no error, we affirm.

The trial court's Opinion and Order, entered March 15, 2002, provides in relevant part:

The facts ... are undisputed.... The testatrix, Mattie Anderson, died on April 6, 1936. Her Last Will and Testament

("the Will") was probated on April 8, 1936....

Among other assets, the testatrix disposed of a thirty-two (32) acre tract of land on the Georgetown Pike in Fayette County, which has been the subject of this action. The pertinent parts of the Will [footnote omitted] are as follows:

### Item II

I will and bequeath to Margaret D. ("Peggy") Alexander, eldest daughter of James S. and Katherine Alexander, of Mercer County, Kentucky, my home place in Fayette County, Kentucky, consisting of about 32 acres of land located on the west side of the Georgetown Pike, where I now live, her said father and mother as well as her younger sister, Harriett E. Alexander, to have the privilege of occupying the said 32 acres home place with the said Margaret D. Alexander as a home as long as the said Margaret may need them, or as they may agree among themselves, to have, hold, use and enjoy all the benefit and income therefrom by the said Margaret D. Alexander for and during her natural life, and to be entitled to full and complete possession of said farm immediately after my death.

If the said Margaret D. Alexander should die leaving a child or children surviving her, then in that event, the said 32 acre tract of land shall vest in fee simple in such child or children in equal shares to have, hold and dispose of as such child or children may see proper, but if the said Margaret D. Alexander should die without a child or children surviving her, then said 32 acre tract of land shall go to and vest in her younger sister, Harriett E. Alexander, to have, hold, use and enjoy all of the same and all income *there-form* [sic] for and during her natural life, her father and mother, the said James S. and Katherine Alexander, to have the privilege of occupying the said home place of 32 acres of land with the said Harriett E. Alexander as a home as long as the said Harriett may need them, or as they may agree among themselves, the said Harriett E. Alexander along with her father and mother to have and be entitled to immediate possession of said farm immediately after my death, and after the death of said Harriett E. Alexander, should the said Margaret D. Alexander then be dead without leaving surviving her a child or children as hereinbefore provided, the said 32 acres farm shall vest in fee simple in the lawful heirs of said Harriett E. Alexander, to have, hold, use and dispose of as such heirs of said Harriett E. Alexander may see fit and proper.

### ITEM VIII

I will, leave and bequeath to Georgetown College, ... in fee simple, all of my farm of about 71 acres of land located on the Georgetown Pike in Fayette County, Kentucky, to be sold and conveyed by said college in due time and the proceeds thereof to be added to and become a part of the permanent endowment fund of said college....

And also, if, after all other bequests hereinbefore set out and provided for have been paid, settled and satisfied, there should remain other or additional money or funds in the hands of my executor than that herein devised or bequeathed, I will and bequeath such other or additional funds or money to said Georgetown College and the same shall be paid to said College and shall be added to and become a part of

the permanent endowment fund of said college, in addition to the proceeds of sale of the aforesaid 71 acre farm.

At the time of the testatrix's death, she was unmarried and had no children [footnote omitted], and was 79 years of age. Her parents were also then deceased, and she apparently had no living siblings.... [T]he testatrix's second cousin, James S. Alexander's two daughters were Margaret D. Alexander, born March 8, 1918 [footnote omitted] and Harriett E. Alexander, born November 8, 1920 [footnote omitted]. When the Will was executed in 1934, Margaret was 16 ... and Harriett was 13.... Both Margaret and Harriett survived the testatrix, with Harriett Alexander dying on June 24, 1992, and Margaret Alexander dying on May 10, 2001. Both Harriett and Margaret died unmarried and without issue.

> This action was originally instituted pursuant to KRS Chapter 389A in order to sell the 32 acres.... The proceeds of that sale currently held by the Master Commissioner of the Fayette Circuit Court are approximately $1,300,000 (the "Fund").[1] The claimants to the Fund are (1) the heirs of Mattie Anderson, the First Intervening Plaintiffs (the "Anderson heirs"), who are a class represented by David Alexander Russell, Julia Russell Leggett, Virginia Lockett Russell, Cordelia Kubale, Harriett Donahue, Mary Lockett Ramft, Don-

ald Donahue, and Stuart Alexander, Jr. [footnote 8, provides: All named Anderson heirs are relatives on the testatrix's maternal side. The Court's opinion is that any heirs on the paternal side are virtually represented by these claimants....] (2) Georgetown College, the Second Intervening Plaintiff ("the College"), and the (3) the heirs of Harriett Alexander, the Defendants ("the Alexander heirs"), John S. Alexander, Andrew B. Alexander, and James G. Alexander [footnote 9 provides: The Alexander heirs are a part of the broader group of heirs of Mattie Anderson. If the claim of the Anderson heirs prevails, the Alexander heirs would share proportionately. If the claim of the Alexander heirs prevails, they take to the exclusion of the other Anderson heirs.]

In interpreting wills, courts are guided by the principle that the testatrix's intention must be determined by language of the will. *Clarke v. Kirk*, Ky., 795 S.W.2d 936, 938 (1990). If the language used is a reasonably clear expression of intent, then the inquiry need go no further. *Id.* The court is limited to the four corners of the document. *Brunson v. Citizens Bank & Trust Co.*, Ky.App., 752 S.W.2d 316, 317 (1988). The question is not what did the testatrix intend, but what she actually did by the express terms of the Will, giving the language used its

---

1. By order of February 9, 1989, the Fayette Circuit Court found that under Will, Margaret D. Alexander is life tenant to the subject premises; that the remaindermen and other parties entitled thereto cannot be determined until Margaret's death and may include persons not yet born; that sale of the property for the purchase price of $1,000,000.00 is in the best interest of all the parties, including any unborn persons; further, that the interest

of the life tenant should continue "as to the funds derived from the sale and that said proceeds should be reinvested and income therefrom distributed as set forth in KRS 389A.030(6)." The circuit court approved the sales agreement, and directed that the remaining sums from the sale of the property, after payment of the real estate commission and costs, be held by the Master Commissioner, subject to further orders of court.

ordinary meaning. *Scheinman v. Marx* Ky., 437 S.W.2d 504, 508 (1969). Under Item II of the Will, the testatrix created a life estate in favor of her cousin, Margaret ... with a remainder in favor of Margaret's children. In the even Margaret died without children, the testatrix provided that Harriett was to have a life estate, "and after the death of said Harriett ... should the said Margaret ... then be dead without leaving" surviving children, fee simple title to vest in the lawful heirs of Harriett. The issue in this case is caused by the fact that Harriett predeceased Margaret.

The trial court relied upon *Andrew's Executrix v. Spruill*[2] for two "well known and oft cited" rules of construction, namely:

(1) An intention to dispose of the entire estate is presumed, and this presumption is overcome only where the intention to do so is plain, unambiguous, or necessarily implied; and (2) in the event of ambiguity, the law favors a construction of the will which disposes of the entire estate of the testatrix.

Noting that the language expressing a remainder in favor of Harriett's heirs was "no more or less" ambiguous than that in *Spruill,* the trial court concluded:

Margaret had a life estate, with a remainder in favor of her children; upon the failure of that class, the testatrix created a life estate in favor of Harriett, and upon the death of both Harriett and Margaret, a remainder in favor of the heirs of Harriett. The phrase "should the said Margaret D. Alexander then be dead without leaving her a child or children as hereinbefore provided" does not require Harriett to survive Margaret in order for Harriett's heirs to take the

remainder, but rather reaffirms that the primary beneficiaries of the farm were Margaret and her children, if any, and expresses that Harriett's heirs were subject to a continuing life estate in favor of Margaret, if Margaret were still living. The phrase also mandates that the class of Harriett's heirs is to be determined following the death of Margaret.

* * *

[T]he Court is of the opinion that the language of the Will, taken as a whole, manifests an intention on the part of the testatrix to leave the 32 acre farm to ... Harriett's heirs following the death of both Harriett and Margaret, it is unnecessary to decide between the claims of the College and the Anderson heirs with respect to whether the reversion passes to the Anderson heirs in intestacy, or to the College under the provisions of Item VIII of the Will, or whether certain Anderson heirs are excluded by the terms of the Will.

The trial court granted the Alexander heirs' motion for summary judgment, denied the motion of the other parties, and directed the Master Commissioner to pay the funds held in three equal shares to the heirs at law of Harriett E. Alexander as determined on May 10, 2001, namely John S., Andrew B. and James G. Alexander.

On March 29, 2002, Georgetown College filed a notice of appeal to this Court (No. 2002–CA–000651–MR); on April 8, 2002, Cross–Appellants filed a notice of appeal to this Court (No.2002–CA–000735–MR, which has been designated as the cross-appeal). On that same date, Cross–Appellants filed an amended notice of appeal, "for the purpose of correcting the style of the action to reflect the matter consolidated with the original action."

2. 271 Ky. 516, 112 S.W.2d 402, 408–409 (1937).

On appeal, Georgetown College asserts that the trial court erred by failing to give effect to the Will language and making the devises in Item II substitutional; further, that the proceeds pass to the College under the residuary clause of the Will. Cross–Appellants assert that the trial court erred by failing to rule that the proceeds held by the Master Commissioner pass to them under KRS 394.500, because both contingent remainders failed.

▆▆▆ The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. There is no requirement that we defer to the trial court, because factual findings are not at issue.[3]

First we address Georgetown College's argument that the trial court "violated" rules of construction in construing the life estates to Margaret and Harriett as successive instead of substitutional. Georgetown College insists that the trial court failed to recognize the "substitution strategy used by attorney Thompson in drafting Mattie Anderson's Will." According to Georgetown College, "[t]he Will language which compels this result is the requirement that the life estate to Harriett ... take effect **immediately** upon Matter [sic] Alexander's death." (Emphasis original.) Georgetown College reasons that because Margaret was alive when Mattie died, the alternate present devise to Harriett was "inoperative and a nullity." Georgetown College submits that a reversion in the proceeds was created in Mattie Anderson's Estate, because the only effective devise was Margaret's life estate. We disagree.

The trial court states that [u]nder Item II of the Will, the testatrix created a life estate in favor of ... Margaret ..., with a remainder in favor of Margarets children. In the event Margaret died without children, the testatrix provided that Harriett was to have a life estate.... The trial court rejected Georgetown Colleges argument that the gift to Harriett, and subsequently her heirs, was conditioned upon Margarets prior death. The court noted the relative ages of Mattie, Margaret and Harriett, at the time the Will was prepared, *citing Jennings v. Jennings,*[4] to the effect that extrinsic evidence is permitted to describe the conditions surrounding the testatrix, so that the interpreter might better appreciate her situation and discern her intent. The trial court viewed neither the language of Item II, nor the circumstances surrounding the Testatrix at the time she executed the Will, as supporting Georgetown Colleges argument. Nor do we. Moreover, we believe that Section 4 of Item II further supports the trial courts interpretation. In that paragraph, Mattie bequeathed to Margaret, or to her guardian if Margaret was not yet 21 years old, the sum of $500.00 to be paid in cash, as soon as possible after Matties death:

> [R]ealizing that after my death the said Margaret is to occupy the said 32 acre tract of land as a home and it will be necessary to have some ready money with which to seed, stock or equip said farm, or make minor repairs, or to cover necessary expenses of planting, producing or harvesting and marketing a crop,....

By contrast, no such provision was made for Harriett. The provision of ready money for Margaret, and the lack of any ready money for Harriett to take care of the 32–acre tract, detracts from any argument

3. *Scifres v. Kraft,* Ky.App., 916 S.W.2d 779, 781 (1996).

4. 299 Ky. 779, 782, 187 S.W.2d 459, 462 (1945).

that the devises to the two sisters were substitutional.

As is said in 23 R.C.L. 552:

"Concurrent or alternative contingent remainders or contingent remainders with a double aspect are created by limitations to one for life, with remainder in fee to his children or issue or heirs, and in default of such children, issue, or heirs, to another." [5]

In his chapter on future interests, Moynihan explains:

A remainder is a future interest created in a transferee which can become a present possessory estate only on the expiration of a prior estate created in favor of another transferee by the same instrument. [footnote omitted]. Thus, A owning Blackacre in fee simple conveys it "to B for life and then to C and his heirs." B has a possessory life estate, called the particular estate, and C has a remainder in fee simple. C's future interest was originally called a remainder because on the expiration of B's life estate the land "remained" away from A, the transferor, instead of reverting to him. At common law the number of remainders which can be created is unlimited. [footnote omitted] Thus, A might convey to B for life, then to C for life, then to D for life, then to E and the heirs of his body, then to F and his heirs. All of the transferees except B have remainders since the interest of each can become a possessory estate upon the expiration of the prior estates. [6]

Upon Mattie's death, Margaret had a possessory life estate in the subject 32 acres, and Harriet and Harriet's heirs had alternative remainders, contingent upon Margaret's dying without child or children surviving her.

Cross–Appellants assert that the contingent remainder to Harriet's heirs failed, and that they are entitled to the proceeds as Mattie Anderson's heirs at law under KRS 394.500. They contend that the reference to Harriet's "lawful heirs" is to lineal descendants, rather than to collateral heirs, and that Harriet died without lineal descendants. Further, Cross–Appellants contend that to "construe 'heirs' to mean Harriett's collateral heirs under the laws of descent and distribution would grant a fee interest in Margaret, since Margaret survived Harriett as one of her heirs."

■ We agree with the trial court's analysis that the term "lawful heirs" is to be given its technical meaning. Cross–Appellants' argument fails for several reasons. First, it disregards the fact that the Will was prepared by an attorney who, as the trial court stated, "presumably knew the difference between the terms 'heirs' and 'children.'" The attorney used those different terms in Item II of the Will referring to Margaret's death without surviving "child or children" and referring to the "lawful heirs" of Harriett. Moreover, Harriett's "lawful heirs" could not include Margaret, contrary to Cross Appellants' reasoning, because Harriett's life estate could only take effect upon Margaret's death without child or children surviving her.

■ The contingent remainder to Margaret's child or children was not extinguished until Margaret died, childless. "The possibility of issue is never considered extinguished.... [W]omen are presumed capable of having children as long

---

5. *Moorman's Ex'r and Trustee v. Board of Sup'rs of Jefferson County,* 192 Ky. 242, 232 S.W. 379, 380 (1921).

6. Moynihan, *Real Property* § 13, pp. 117–18 (2nd Ed.1988).

as they live.[7] At the time of Margaret's death, Harriett was already dead. The contingent remainder in Harriett's heirs did not then fail, it vested. We are not persuaded by the Cross–Appellants argument that Harriet surviving Margaret was a condition precedent to Harrietts heirs taking the remainder. Were we to construe the Will as Cross–Appellants urge, Mattie Anderson would have died intestate as to her own home place. Kentucky law holds that [t]here is a presumption against intestacy, and when two possible constructions of a will present themselves, the one which results in complete testacy should prevail."[8] The trial court's construction—that the language of the Will does not require Harriett to survive Margaret—results in complete testacy.

Accordingly, we hold that the trial court correctly construed the language of the Will as manifesting an intention to leave the 32–acre farm to Harriett's heirs, following the death of both Harriett and Margaret. We do not reach the remaining issues raised by Georgetown College and the Cross–Appellants.

The Opinion and Order of the Fayette Circuit Court entered March 15, 2002, is affirmed.

JOHNSON, Judge, Concurs.

BAKER, Judge, Concurs in Result.

---

7. *Aulick v. Summers,* 186 Ky. 810, 217 S.W. 1024, 1025 (1920); *Walton v. Lee,* Ky., 634 S.W.2d 159 (1982).

8. *McKee v. Johnson,* Ky. 312 S.W.2d 902, 903 (1958).